**BRISTOL TECHNOLOGY, INC., Plaintiff,**

v.

**MICROSOFT CORPORATION, Defendant.**

**No. CIV.A. 3:98–CV–1657(JCH).**

United States District Court, D. Connecticut.

Nov. 3, 2000.

Patrick Lynch, O'Melveny & Myers, Los Angeles, CA, John L. Altieri, Jr., Annette Poblete, Achilles M. Perry, O'Melveny & Myers, New York, NY, Mladen D. Kresic, Kresic & Corleto, Ridgefield, Ct, Anthony L. Clapes, Technology Law Network, Honolulu, HI, for Bristol Tech. Inc.

David B. Tulchin, Michael T. Tomaino, Jr., Marc De Leeuw, Elizabeth P. Martin, Brian T. Frawley, John J. Sullivan, Sullivan & Cromwell, New York, NY, James Sicilian, Day, Berry & Howard, Hartford, CT, Steven J. Aeschbacher, Microsoft Corp., Redmond, WA, Steven W. Thomas, Sullivan & Cromwell, Los Angeles, CA, for Microsoft Corp.

Rachel Olivia Davis, Steven Mark Rutstein, Attorney General's Office, Hartford, CT, Mark F. Kohler, Attorney General's Office, Hartford, CT, for State of Conn.

### RULING ON MOTION FOR ATTORNEYS' FEES AND COSTS [DKT. NO. 442]

HALL, District Judge.

## I. BACKGROUND

This action was commenced in August 1998 by Bristol Technology, Inc. ("Bristol"), a Connecticut corporation primarily owned by the Blackwell family. In its fourteen-count Complaint, Bristol alleged various theories of violations by Microsoft Corp. ("Microsoft") of the federal and state antitrust laws and of the Connecticut Unfair Trade Practices Act ("CUTPA"). At the time it filed its complaint, Bristol sought a preliminary injunction and expedited discovery. The court held a hearing on the preliminary injunction motion and

denied it. However, based upon the record in that hearing and its findings, the court scheduled the trial for June 1, 1999.

On January 15, 1999, Microsoft filed its answer and counterclaims [Dkt. No. 110]. Microsoft claimed breach of contract (Count 1), copyright infringement (Count 2), and misappropriation of trade secrets (Count 3). Microsoft filed a motion to dismiss, or in the alternative for summary judgment on, the antitrust claims, and Bristol filed a Motion for Partial Summary Judgment on its CUTPA claims. *See* Dkt. Nos. 46 & 165. These motions were denied by the court. *See* Dkt. Nos. 95 & 308.

The parties engaged in intensive and contested discovery of each other and third parties both before the preliminary injunction hearing and after the court's Ruling on the preliminary injunction. There were numerous discovery motions and pretrial conferences and motions. Microsoft also filed a Motion for Summary Judgment on Counts Two and Three of its counterclaims,[1] as did Bristol, and Microsoft filed a Motion for Summary Judgment on Bristol's antitrust claims. *See* Dkt. Nos. 160, 169 & 170. The court also ordered the trial of the counterclaims severed from the trial of Bristol's claims.[2]

Despite motions by Microsoft to continue the trial date [Dkt. Nos. 97 & 146], jury selection was held on May 20, 1999, and evidence commenced on June 3, 1999. The jury returned its verdict on July 16, 1999. The jury found that Bristol had failed to prove its relevant market on each of its antitrust claims. It also did not find that Bristol had proven Microsoft committed an unfair act or practice under CUTPA ("unfair CUTPA"). The jury did find that Microsoft had engaged in a deceptive act or practice which had caused Bristol to suffer an ascertainable loss. The jury

awarded Bristol nominal damages of $1.00. *See* Dkt. No. 420.

Post-trial, Bristol filed motions for a permanent injunction [Dkt. No. 431] and punitive damages [Dkt. No. 433], both of which were granted by this court. *See Bristol Tech., Inc. v. Microsoft Corp.*, 114 F.Supp.2d 59 (D.Conn. Aug.31, 2000). Bristol also filed a Motion for Award of Attorneys' Fees and Costs [Dkt. No. 442]. For the reasons set forth herein, the court grants that motion in part and denies it in part.

## II. *ATTORNEYS' FEES*

### A. Legal Standards

■ "In diversity cases, attorney's fees are considered substantive and are controlled by state law." *United States v. One Parcel of Property Located at 414 Kings Highway*, No. 5:91–CV–158, 1999 WL 301704, at *4 (D.Conn. May 11, 1999) (citations omitted); *see also Kaplan v. Rand*, 192 F.3d 60, 70 (2d Cir.1999). CUTPA expressly provides that "the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." Conn. Gen.Stat. § 42–110g(d); *see also id.* § 42–110g(g) ("In any action brought by a person under this section there shall be a right to a jury trial except with respect to the award of punitive damages under subsection (a) of this section or the award of costs, reasonable attorneys' fees and injunctive or other equitable relief under subsection (d) of this section."). Thus, CUTPA expressly requires that such an award be made by the court, be made to "the plaintiff," and be made in addition to other relief provided by CUTPA. *Id.* § 42–110g(d). "The ability to recover both attorneys' fees . . . and punitive damages

---

1. Microsoft moved to dismiss Count One of its counterclaims [Dkt. No. 181], which Motion the court granted on May 19, 1999.

2. Counts Tow and Three of Microsoft's counterclaims remain pending following the court's denial of cross-motions for summary judgment. *See* Dkt. No. 475. A trial is scheduled for March 2001.

... enhances the private CUTPA remedy and serves to encourage private CUTPA litigation." *Hinchliffe v. Am. Motors Corp.,* 184 Conn. 607, 617, 440 A.2d 810 (1981) (citations and internal punctuation omitted); *see also Gill v. Petrazzuoli Bros., Inc.,* 10 Conn.App. 22, 33, 521 A.2d 212 (1987).

■ It is also well-established that the award is in the discretion of the trial court. "The statute contains no standard by which a court is to award attorney's fees, thus leaving it to the sole discretion of the trial court to determine if attorney's fees should be awarded and the amount of such an award." *Staehle v. Michael's Garage, Inc.,* 35 Conn.App. 455, 461, 646 A.2d 888 (1994). " 'Awarding ... attorney's fees under CUTPA is discretionary; ... and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done.' " *Id.* (quoting *Gargano v. Heyman,* 203 Conn. 616, 622, 525 A.2d 1343 (1987)); *cf. Alderman v. Pan Am World Airways,* 169 F.3d 99, 102 (2d Cir.1999) (" 'The standard of review of an award of attorney's fees is highly deferential to the district court.' ... This standard takes into account that the amount sought for attorney's fees is dependent on the unique facts of each case.... Attorney's fees must be reasonable in terms of the circumstances of the particular case, and the district court's determination will be reversed on appeal only for an abuse of discretion." (citations omitted)).

Courts considering fee applications under CUTPA calculate attorneys' fees through the "lodestar" method. *Societa Bario E Derivati v. Kaystone Chem., Inc.,* No. 5:90–CV–599, 1998 WL 182563, at *11 (D.Conn. Apr.15, 1998); *see also Kaplan v. Gruder,* No. CV 960334308S, 2000 WL 767679, at *1 (Conn.Super. May 25, 2000). "Such a calculation requires the Court to determine the number of hours reasonably spent on the litigation and to exclude hours which are excessive, redundant or otherwise unreasonable." *Societa Bario,*

1998 WL 182563, at *11 (citation omitted). "There exists a strong presumption that the lodestar figure represents a reasonable fee." *Id.* (citation omitted). "Calculation of the lodestar also requires the Court to determine the 'prevailing market rates' for the type of services rendered, *i.e.* the fees that would be charged for similar work by attorneys of like skill in the area." *Id.* (citations omitted); *see also Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates,' *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891[ ] (1984), for comparable attorneys of comparable skill and standing in the pertinent legal community.").

■ Despite the use of the lodestar method which is familiar from other contexts in which fee awards are authorized by statute or common law, "[t]he award of attorney's fees and punitive damages under CUTPA has some features not common to such awards in other types of cases." *Jacques of All Trades Corp. v. Brown,* 42 Conn.App. 124, 131, 679 A.2d 27 (1996) ("*Jacques I*"), *aff'd,* 240 Conn. 654, 692 A.2d 809 (1997). First, the statute speaks of "the plaintiff" recovering fees and does not contain the "prevailing party" language found in other attorney's fees statutes. *Compare* Conn. Gen.Stat. § 42–110g(d) *with* 42 U.S.C. § 1988(b). Thus, consideration of whether a civil rights plaintiff "prevailed" when he recovered nominal damages or lost on some of his factual or legal theories is not present in CUTPA cases. *See Jacques I,* 42 Conn. App. at 131, 679 A.2d 27 (citing *Tillquist v. Ford Motor Credit Co.,* 714 F.Supp. 607 (D.Conn.1989)). Second, and perhaps more significant, is the express statutory proscription that whether to award fees, and if so how much, is not to be based on the dollar amount of the recovery. *Id.* (citing Conn. Gen.Stat. § 42–110g(d)).

■ To determine the reasonableness of the fees a CUTPA plaintiff is seeking, the Connecticut Appellate Court has held that

the factors identified by the court in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 715 (5th Cir.1974), a case arising under the Federal Civil Rights Act of 1964, apply to fee applications under CUTPA. *See Steiger v. J.S. Builders, Inc.*, 39 Conn.App. 32, 38, 663 A.2d 432 (1995); *see also Jacques All Trades Corp. v. Brown*, 57 Conn.App. 189, 198, 752 A.2d 1098 (2000) (*"Jacques II"*); *Hernandez v. Monterey Village Assoc. Ltd. P'ship.*, 24 Conn. App. 514, 517 n. 3, 589 A.2d 888 (1991). The *Johnson* factors are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee for similar work in the community;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

488 F.2d at 715. Subsequent to the *Johnson* decision, the United States Supreme Court addressed the Fifth Circuit's analysis and the considerations involved in the issuance of fee awards in Civil Rights Act cases in *Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3, 434 n. 9, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The *Hensley* court stated that the district court could apply the *Johnson* factors not specifically addressed in *Hensley*, although the Supreme Court noted "that many of these factors usually are submissions within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n. 9, 103 S.Ct. 1933.

In this case, while the court is directed to *Johnson* (and presumably *Hensley* as well) by the Connecticut Appellate Court, the factors must be applied consistent with the Connecticut legislature's express direction. Thus, for example, the question whether plaintiff achieved a "level of success" in the analysis established by *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933, cannot be answered in CUTPA cases with reference to the dollar recovery as it is in other contexts.

With this qualification in mind, however, the court notes that the *Hensley* court also found that "results obtained" is often a crucial factor where, as here, the plaintiff did not succeed on all its claims for relief. In such situations, two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? *Id.* at 434, 103 S.Ct. 1933; *see also DeLeon v. Little*, No. 3:94–CV–902, 2000 WL 435494, at *5 (D.Conn. Mar.2, 2000). Contrasting a case where the work on one claim will be unrelated to work on another, with a case where there is a common core of facts or related legal theories, the *Hensley* Court suggested that, in the former, unrelated work should be treated as raised in a separate lawsuit, while recovery in the latter case should focus on the "overall relief obtained in relation to the hours reasonably expended on the litigation." 461 U.S. at 434–35, 103 S.Ct. 1933.

Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the

district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

. . .

If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . Again, the most critical factor is the degree of success obtained.

*Id.* at 435, 436, 103 S.Ct. 1933 (footnote omitted). The *Hensley* Court concluded:

Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* at 440, 103 S.Ct. 1933.

■ Thus, "[a] prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were 'based on different facts and different legal theories.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933). At the same time, courts have noted that, "[d]eduction is improper, however, where the hours expended on unsuccessful claims were not frivolous. . . . Where the plaintiff obtains otherwise excellent results, the court's rejection of alternative legal grounds is not a cause for a reduction in fees." *Pridgen v. Andresen*, No. 3:94–CV–851, 2000 WL 865053, at *8

(D.Conn. Mar. 31, 2000) (citations omitted); *see also Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir.1994) ("We agree with the Magistrate Judge that Lunday's partial success at trial does not require a reduction in the lodestar amount of fees . . . .").

The Connecticut Supreme Court has also addressed the issue of recovery of fees in a case where the plaintiff prevailed on only some of his legal theories. *Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 195, 510 A.2d 972 (1986) (decided under the Connecticut Uniform Securities Act); *see also Versyss, Inc. v. Holbrook*, No. CV88–0354495S, 1993 WL 280126 (Conn.Super. July 7, 1993) (applying *Russell* to CUTPA case). The court in *Russell* rejected the defendants' argument that "the award was excessive as a matter of law because the fees that the trial court allowed improperly included amounts allocable to the plaintiff's unsuccessful claims of fraud and violation of CUTPA." 200 Conn. at 194, 510 A.2d 972. The court found that "[t]his argument is unpersuasive because it erroneously assumes that, under § 36–498, an award of attorney's fees must automatically be reduced if its recipient fails to prevail on all of his claims at trial," which the court held is not the rule. *Id.* Rather, the Connecticut Supreme Court held that, "[w]here a party succeeds on his § 36–498 claim, but fails on other claims brought in the same suit, the size of his award should reflect his success, as determined by the trial court, in securing redress for the injuries that prompted his § 36–498 claim and reasonable legal cost incurred in pursuing this success." *Id.* at 195, 510 A.2d 972 (citing *Hensley*, 461 U.S. 424, 103 S.Ct. 1933). The *Russell* court therefore concluded that, because the litigation expenses, including that spent on unsuccessful claims, "were devoted to the pursuit of a goal that he achieved," all fees should be allowed, not merely a numeric ratio of the successful claims. *Id.*

Similarly, courts in this circuit have followed Connecticut state court case law, including *Russell*, to hold that, where "there is no reasonable way to segregate counsel's time . . . by claim," the parties' claims were "interrelated," and "the time and money expended . . . were in the pursuit of one common goal," division of the fee based on a plaintiff's success on one claim but failure on others is not appropriate. *J.P. Sedlak Assocs. v. Conn. Life & Cas. Ins. Co.*, No. 3:98–CV–145, 2000 WL 852331, at *3–*5 & *4 n. 8 (D.Conn. Mar.31, 2000) (discussing Connecticut law). A New York federal court, faced with a situation similar to that in the instant case, held that:

> [i]n light of controlling Connecticut case law, this court will not reduce the award of attorneys' fees solely based upon the fact that plaintiff did not succeed on all of its theories. The fees requested are necessary and reasonable as long as they were "related to the prosecution of the CUTPA cause of action." *Versyss Inc.*, 1993 WL 280126, at *3. Plaintiff's fees are related to the CUTPA cause of action because they were incurred while plaintiff sought relief from defendants' behavior which this court found violated CUTPA.

*Boulevard Assocs. v. Sovereign Hotels, Inc.*, 868 F.Supp. 70, 72–73 (S.D.N.Y.1994).

Second Circuit precedents in analogous contexts also provide helpful guidance in defining the process by which to determine the fee award in the instant context. The Court of Appeals has held that, "[h]ours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, . . .

and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch*, 148 F.3d at 173 (citations omitted).[3] The *Hensley* Court held that, for determining the amount of a fee award where the plaintiff succeeded on only some of its claims, "[t]here is no precise rule or formula for making these determinations," and "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." 461 U.S. at 436–37, 103 S.Ct. 1933; *see also DeLeon*, 2000 WL 435494, at *5 n. 8 ("When the success achieved is limited compared to the relief sought, the court may either identify specific hours to be eliminated or simply reduce the award to make it reasonable in light of the limited nature of the relief obtained on the merits." (citing *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933)).

■ The court will therefore review the entire fee application and eliminate those entries which relate solely to Bristol's antitrust claims, which types of entries Bristol agrees are not sufficiently related under a *Hensley* analysis to be included in a CUTPA fee award. The court will then consider Microsoft's specific objections to various entries in Bristol's fee application. Finally, based on the court's review of the fee application and familiarity with the entire case, the court will determine reasonable percentages, if necessary, by which to reduce the overall remaining lodestar figure:

---

**3.** Similarly, in a case on which the Court of Appeals relied in *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir.1998), the Second Circuit held:

> In ruling on the fee application, the District Court dealt with plaintiffs' five lead attorneys principally through individual percentage cuts, ranging from five percent to twenty percent. Judge Bartels was acting within his discretion when he chose to make percentage reductions in response to defendants' detailed claims that the fee

application contained excessive and duplicative hours. In similar cases with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application. . . . These courts have endorsed percentage cuts as a practical means of trimming fat from a fee application.

*N.Y. State Ass'n for Retarded Children v. Carey* 711 F.2d 1136, 1146 (2d Cir.1983) (citations omitted).

(1) to reflect the court's determination of the difference between Bristol's attorneys' reported rates and the "prevailing market rates" for the type of services rendered; (2) to account for time spent in fee entries which would not be wholly required to litigate a case involving only the "deceptive CUTPA claim"[4] on which Bristol prevailed; and (3) to adjust for time which the court finds is excessive, redundant or otherwise unreasonable for the litigation of a successful CUTPA deceptive act or practice claim.

## B. O'Melveny & Myers

1. *Exclusion of unrelated antitrust fee entries.* Bristol has voluntarily excluded any fee entries relating solely to its unsuccessful antitrust claims as well as time within certain entries which it could identify as related only to the antitrust claims. Bristol then identified the fees incurred solely in connection with its successful theory of recovery for its deceptive CUTPA claim. Bristol then reduced by 10% the difference between the aggregate remaining fees and the fees related solely to Bristol's deceptive CUTPA claim. This 10% reduction was designed to approximate "a reasonable discount for effort that would not have been required if Bristol's case had been limited to a CUTPA theory other than a violation of a antitrust policy." Dkt. No. 444 at ¶ 7.

After the filing of Bristol's initial fee application, Microsoft identified certain items it claimed were related solely to Bristol's antitrust claims which remained in Bristol's fee application. Bristol removed several of these fee entries which it agreed should not be included but which Bristol simply overlooked in its initial review.[5]

As a general matter, the court finds that this is a reasonable approach and consistent with the court's reading of the controlling law for the award of attorneys' fees in diversity CUTPA cases. The court cannot agree, however, that a 10% reduction will adequately account for the fee entries in Bristol's application which are not reasonable and necessary for litigating Bristol's deceptive CUTPA claim. Although Bristol's approach is sensible, the court finds that extracting antitrust-only entries and then reducing by 10% the remaining fees, other than those devoted entirely to Bristol's deceptive CUTPA claim, will not end the court's analysis. As such, the court will reduce Bristol's total lodestar figure by the amounts and percentages discussed below, in accordance with the court's findings regarding the reasonableness and necessity of specific fee entries and hourly rates, as well as the overall amount of fees and costs sought.

At the same time, the court rejects Microsoft's suggestion that, because Bristol failed to prevail on fifteen of the sixteen counts in its complaint, Bristol is entitled to no more than 1/16, or 6.25%, of the bulk of its requested fees. *See Versyss,* 1993 WL 280126, at *3 (citing *Russell,* 200 Conn. at 195, 510 A.2d 972). Indeed, Microsoft has cited no Connecticut case law, and the court is unaware of any, that would support such an approach. Although Microsoft does not state the exact amount to which it believes Bristol is entitled in fees, the court understands Microsoft's position on Bristol's fee application to be that Bristol is entitled to no more than $400,000 in fees, once the categories of fee entries that Microsoft would exclude entirely or in large part are subtracted

---

4. For ease of reference, the court will use the phrase "deceptive CUTPA claim" to refer to Bristol's CUTPA claims that were not based on antitrust violations.

5. The court notes that these later, voluntary withdrawals were necessitated by Microsoft's failure to confer with Bristol regarding the fee application prior to Bristol's filing of the ini-

tial application with the court. The court had asked the parties to attempt to resolve as many objections as possible by conferring about Bristol's proposed fee application. Microsoft, however, failed to object to any entries until filing its memorandum in opposition.

from Bristol's requested attorneys' fees. Given Bristol's success on its deceptive CUTPA claim and the complexity and length of the litigation which resulted in that success, the court simply cannot accept Microsoft's approach.

2. **Total lodestar figure once anti-trust claims are excluded.** Bristol's total requested attorneys' fees for work performed by O'Melveny & Myers, after its voluntary removal of antitrust-only items and before applying Bristol's 10% reduction, amounts to $4,663,895. However, after a careful review of the entire fee application, the court identified several additional entries which the court finds should be excluded entirely as related solely to Bristol's antitrust claims. These entries total $5,918.50.[6] After subtracting these entries, the court finds the aggregate lodestar figure for O'Melveny & Myers to be $4,657,976.50 before applying any reduction for the considerations discussed below, *i.e.,* Microsoft's specific objections, hourly rates, entries unrelated to a deceptive-CUTPA-only case, and redundant or excessive fees.

3. **Review of Microsoft's Objections to Specific Fee Entries.** Microsoft raises several specific objections to particular time charges claimed in the fee application. The court will address these objections

first, and then identify those entries which, in the court's judgment, should not be included in the aggregate lodestar figure.

First, Microsoft, citing *Russell,* objects to the inclusion of fees that Bristol has incurred in connection with its preliminary injunction motion because Bristol was not "successful" on its motion. This court does not read *Russell's* concept of "success" to apply to every stage or step in the litigation, but rather to the ultimate outcome.[7] Thus, even though the preliminary injunction hearing was focused on Bristol's antitrust claim, much of the testimony and factual evidence presented by Bristol at the hearing related to, and was useful in, Bristol's prosecution of its successful deception CUTPA claim.[8] However, much of the briefing should be disallowed because it related substantially to legal analysis of the antitrust claims. The court finds that a total of approximately $140,000 in fee entries relate to the preliminary injunction, and the court will reduce this amount by 80% to reflect the predominance of antitrust and antitrust-related issues in the legal briefing. The court will thus allow fees in the amount of $28,000 claimed in connection with the preliminary injunction, or, conversely stated, deduct $112,000 from the lodestar figure.[9]

6. Also included within this figure is the time charged by a partner to travel to the Bridgeport federal courthouse to file Bristol's complaint and preliminary injunction motion, which the court finds to have been unnecessary.

7. The court did note at the time of the preliminary injunction hearing that a deceptive CUTPA claim was not plead. *See* Dkt. No. 94 at 44 n. 46. The court's observation was in the context of the briefing, in which very little time was spent on CUTPA in general and in which no time was devoted specifically to a deceptive CUTPA claim. Of course, under the liberal pleading rules of the Federal Rules of Civil Procedure, enough was plead to satisfy Fed.R.Civ.P. 8(a) with respect to a deceptive CUTPA claim. The court's remark was more a reflection on the fact that a deceptive CUT-PA claim was not being asserted in the context of the preliminary injunction hearing. However, Bristol expressed that it intended to

plead a deceptive CUTPA claim in open court at the hearing and subsequently amended its complaint to expressly state it.

8. The court also does not agree with Microsoft that there would necessarily not have been a preliminary injunction hearing if only the deceptive claim was pressed. Bristol could have attempted to prove irreparable harm arising out of Microsoft's deceptive acts concerning the WISE Program and have sought the same injunctive relief under CUTPA. *See* Conn. Gen.Stat. § 42–110g(d).

9. Given the volume of timekeeper records, the court does not claim to have precisely captured every item concerning briefing on the preliminary injunction motion, or other specific categories that follow. Based on its review, however, the court is confident that its figures fairly approximate the amounts in issue.

Microsoft also suggests that Bristol's work associated with Microsoft's Motion to Dismiss, or in the alternative, Motion for Summary Judgment, its Motion for Judgment on the Pleadings, and its second Motion for Summary Judgment, and supporting legal research, were all related to Bristol's antitrust claims and the antitrust and promissory estoppel theories for its unfair CUTPA claims and almost wholly unrelated to the deceptive CUTPA claim. The court agrees and finds that Bristol has claimed fee entries totaling approximately $84,000 in connection with O'Melveny & Myers's work on matters relating to Bristol's pre-trial pleadings and legal research and briefing concerning promissory estoppel and Bristol's other theories solely in support of its unfair CUTPA claim. The court will reduce these entries by 80% to reflect the substantial portion of this time which was unrelated to Bristol's deceptive CUTPA claim and award $17,000 in connection with these entries, reducing the lodestar by $67,000.

Microsoft next objects to items claimed for numerous dealings with the U.S. Department of Justice ("DOJ") and the Connecticut Attorney General's Office ("Conn. A.G."). The court notes that, during the pendency of this action, there was pending an action brought by DOJ and, *inter alia,* the Conn. A.G. against Microsoft. Although this court refused to consider that case or the decisions therein in the pending action, it is not unreasonable for Bristol to seek assistance from and to consult with state and federal agencies with which it has a mutual litigation adversary. Bristol used in this case evidence from the DOJ case, *e.g.,* Bill Gates' video deposition, which was related to Bristol's proof of its successful deceptive CUTPA claim. On the other hand, the court finds the amount of time that Bristol spent on these dealings, particularly on coordination and communication with the Conn. A.G., to be excessive, given Bristol's status as a private attorney general under CUTPA. As such, the court

has deducted one-half (½) of the entries involving that coordination, to reduce from the approximately $27,000 in fees that Bristol requested in connection with these matters to $13,500.

With regard to the efforts to modify protective orders in the DOJ and two other private litigations against Microsoft, the court will disallow these fee entries. Regardless of whether these efforts were themselves "successful" or not, as Microsoft emphasizes, the court finds that it would not be reasonable and necessary for Bristol to seek this information, or to attempt to intervene in other cases involving Microsoft, in litigation involving only its deceptive CUTPA claim. The court accordingly will disallow these fee entries, amounting to approximately $21,500.

Microsoft next objects that Bristol's application for discovery-related fees of $1.3 million (net of the 10% reduction) is unreasonable primarily because, it argues, the deceptive CUTPA claim could not reasonably require such discovery efforts. The court has reviewed the depositions taken [10] and the various discovery issues raised, in conference or in pleadings. After that recent review, and based also upon the court's knowledge of the case generally, it is this court's view that, although the discovery costs may have overall been less if only a deceptive CUTPA claim had been prosecuted, the discovery expenses would have still amounted to a significant portion of the actual $1.44 million. The court bases this conclusion on how vigorously contested this case was, and the number and type of disputes that needed the court's intervention, which disputes were more than the court would have expected. Further, while proof of, *e.g.,* a relevant market were unnecessary to the plaintiff's deceptive CUTPA claim, the overwhelming portion of remaining discovery related in some way to the WISE Program and/or the competitive threats faced by Microsoft which was arguably affecting its behavior in creating and altering the WISE Pro-

10. The number of depositions taken by each side was limited by court order.

gram. Having reviewed the fee application, the court therefore finds that a significant portion of the discovery items may be included in full. The court will reduce by a percentage approximation that portion which exceeds what would be reasonable and necessary to the proof of Bristol's deceptive CUTPA claim, within the aggregate percentage reduction identified below.

Microsoft further objects to fees sought with regard to certain experts. First, there are objections to specific time entries for work with respect to experts engaged on economic/antitrust issues such as relevant market and damages issues. Bristol has voluntarily withdrawn almost all of these fee entries. However, because the court agrees with Microsoft on those items, the court has disallowed those remaining fee entries relating to economic/antitrust and damages experts, e.g., preparation for cross examination of Microsoft's damages expert Velturro.

Microsoft also objects to fees for any work related to Professor Barnett, who was proposed as an expert. In response, Bristol has voluntarily excluded the specific fee entries which Microsoft identified that related to work with Dr. Barnett.

Microsoft also objects to fees incurred with respect to witnesses MacCrisken, Hollaar, Bennett, and Madnick. The court does not agree that these items should be excluded. These witnesses' testimony was relevant to the deceptive CUTPA claim to provide the jury with the necessary understanding of the technological context in which Bristol's deceptive CUTPA claim arose and with which it was inextricably intertwined.[11] Moreover, the court notes that Microsoft insisted that it would turn over its source code only to an outside computer expert, thus necessitating Bristol's employment of Dr. Bennett. The court will not disallow the fees incurred by

Bristol in connection with these expert witnesses.

Finally, with regard to experts, Microsoft objects to fees sought concerning work done by NERA and its experts. Although the court notes that Bristol was forced to incur unnecessary expense because of Microsoft's recalcitrance concerning NERA discovery, it agrees with Microsoft that the NERA work and experts related to items not recoverable. The court's review of the fee application reveals that Bristol has withdrawn these fee entries.

Next, Microsoft objects to fees claimed for substantial work on jury instructions. Bristol replies that it has eliminated 100 hours for work spent on antitrust-related jury instructions. After review of the entries submitted, the court concludes that Bristol has removed only a portion of the work performed on jury instructions which would not have been necessary in a case tried on only a deceptive CUTPA claim. Thus, to the extent Bristol's voluntary reduction of several entries does not adequately account for the proper amount, the aggregate percentage reduction below will reflect the court's decision to disallow these items.

As its last specific objection to the fee application, Microsoft objects to time entries for "post-trial motions" as premature. Given the court's Rulings on Bristol's Motion for Injunctive Relief and Punitive Damages, *Bristol Tech.*, 114 F.Supp.2d 59, fees on such post-trial motions are no longer premature and are allowed. However, Microsoft is correct that, at this time, Bristol is not entitled to fees incurred with regard to post-trial work related to Bristol's unsuccessful and unrelated claims. Bristol agrees and has eliminated these entries in its modified fee application.

Microsoft has also identified several "Miscellaneous" categories of entries to

---

11. Only Hollaar and Bennett testified at trial. Further, given that MacCrisken and Madnick were listed by Microsoft as trial witnesses, it was reasonable for Bristol to have prepared for the possibility that they would testify at trial. As such, the court finds that fee entries related to these two witnesses are reasonable.

which it objects. The court notes that Microsoft's objection to several of these items—attorneys' dealings with the press, dealings with the Software Publishing Association, research concerning IDC reports, work in connection with Keith Blackwell's Fall 1998 deposition before the DOJ, the designation of the deposition of Srinivasan—have been withdrawn voluntarily by Bristol and are no longer included within its updated fee application. The court also finds that Bristol reasonably and necessarily incurred expenses in connection with research concerning Linux and several Microsoft products, which was factual research reasonably related to the proof of Bristol's deceptive CUTPA claim to provide the jury with an understanding of the context for Microsoft's statements regarding the WISE Program. The court also finds reasonable and necessary the fee entries relating to O'Melveny & Myers's work in connection with the declaration of Kertzmann, which the court finds sufficiently related to the proof required for Bristol's deceptive CUTPA claim. Accordingly, these items will be allowed, over Microsoft's objection.

On several other items, however, the court agrees with Microsoft, and accordingly the aggregate percentage reduction identified below will reflect the court's decision to disallow most, if not all, of these items. These items include O'Melveny & Myers's research regarding Bristol's CUTPA theory based on the *Dell* FTC decision, which the court finds was closely tied to Bristol's unfair antitrust-based CUTPA claim, and O'Melveny & Myers's work concerning antitrust-related issues such as harm to competition, monopoly leveraging, exclusionary conduct, and antitrust standing, which the court has not excluded entirely in the earlier reduction.

4. *Hourly Rates.* Bristol has submitted an affidavit of counsel attesting that the hourly rates charged by its counsel are their normal hourly rates and notes that it has charged these rates in other matters for clients in Connecticut. *See* Dkt. 444. Microsoft argues that plaintiff counsel's hourly rates are higher than those normal and customary for Connecticut and that the fees allowed should be lowered to reflect that. Microsoft further argues that only Connecticut rates and not out-of-state rates are reasonable, arguing that there was no need for Bristol to hire out-of-state counsel because CUTPA claims are common-place and the CUTPA claim on which Bristol prevailed was not complex or challenging.

While disagreeing that the matter was not complex or challenging, the court agrees with Microsoft's counsel that there are trial attorneys and firms in Connecticut capable of handling this case for Bristol, and it therefore rejects Bristol's claim that no Connecticut firm could litigate this case for it. Whether any of these firms would have been willing to take on the staffing of the case is, of course, unknown.[12]

Microsoft's Connecticut counsel submitted an affidavit concerning the issue of hourly rates.[13] He provided fee ranges for 1– to 4–year associates ($135–$190) and 5– to 7–year associates ($190–$245) and his own rate of $280. The court notes that missing from his affidavit is the range of partner rates at his firm.[14] The court also notes that his firm has offices in both Hartford and Stamford and is aware that billing rates are higher in the latter office generally than in the former. Thus, the two ranges set forth include the lower

---

12. One of them would be Microsoft's local counsel. Furthermore, Microsoft's objection to the necessity and reasonableness of Bristol's hiring of O'Melveny & Myers is discredited somewhat by Microsoft's own retention of Sullivan & Cromwell, despite its simultaneous employment of one of the aforementioned Connecticut firms as its local counsel.

13. Its lead, New York City counsel did not.

14. No information was submitted on rates for attorneys at Sullivan & Cromwell, a firm more comparable in role to O'Melveny & Myers.

Hartford rates. The court is aware, based on its own experience in practice and on other fee applications, that, on extremely complex and challenging matters like this, experienced trial partners may bill as high as the $350 to $375/hour range and that a first year partner may bill in the $200 to $250/hour range.

Given the difficulty of this case—the time pressure, the complexity of the subject matter, the vigor with which it was defended—the court will allow the hourly rates reported for several of the timekeepers from O'Melveny & Myers, based on the submissions by the parties as well as the court's knowledge of Connecticut rates. The court finds that these rates reflect the upper range of hourly rates for Connecticut attorneys of comparable experience, and the court finds it reasonable for Bristol to engage the services of counsel at such rates. The court also finds that the rates charged are, in some instances, higher than that which the court considers necessary and reasonable for this case based on prevailing market rates in Connecticut.[15]

In order to make a reasonable and accurate reduction of the entire fee award to reflect the court's reductions in some timekeepers' rates, the court has calculated a weighted average percentage reduction of these timekeepers' rates to apply to the aggregate lodestar figure.[16] Weighting these reductions in accordance with the proportion of the aggregate lodestar figure that these timekeepers' fee entries represent, the court has approximated that the aggregate lodestar figure should be reduced by 15% to reflect the court's determination of the difference between Bristol's attorneys' reported rates and the 'prevailing market rates' for the type of services rendered.[17] With this reduction, the court finds, based on its own experience and knowledge of fees, as well as the materials submitted by both parties in connection with Bristol's fee application, that the rates charged by the timekeepers for O'Melveny & Myers are reasonable.

**5. Unsuccessful claims.** In the trial of Bristol's claims, it was clearly unsuccessful on its antitrust claims, as well as on that part of its CUTPA claim that relied on antitrust-type conduct or a promissory estoppel theory to establish unfair acts or practices. Bristol, however, did succeed on its CUTPA claim that rested on a deceptive act or practice, and Bristol obtained post-trial injunctive relief and punitive damages.

Moreover, although the legal theories underpinning Bristol's antitrust and CUTPA unfair act or practice claim were distinct from the theory underlying its successful CUTPA deceptive act or practice claim, each claim rested on a common core of facts: Microsoft's conduct with regard to its WISE Program.[18] As Bristol

15. For example, the court finds that Attorney Altieri's reported rate of $470 (1998) and $500 (1999) is too high compared with prevailing market rates, and the court will not recognize this as an appropriate rate in Connecticut in this case. The court finds that Altieri's rate should be reduced approximately 20% (1998) and 25% (1999) to $375. The court finds in this case that $375 is an appropriate rate for a trial lawyer with almost 30 years experience in complex civil litigation.

16. At the court's request, Bristol submitted a summary of the total hours billed by for each timekeeper at their 1998 and 1999 rates. See Dkt. No. 486.

17. By way of example only, Attorney Altieri billed 461.3 (in 1998) and 1137 (in 1999) out of the 19,428.9 total hours claimed in the fee application, or approximately 8% of the total time. In 1998, his reported billing was $470/hour, and in 1999 it was $500/hour. The court finds that Attorney Altieri's reasonable billing rate for each year was $375/hour. Reducing the fees awarded to reflect this reduced hourly rate results in an overall reduction in the lodestar figure of approximately 4%, based on the reduction in the hourly rates as applied to Attorney Altieri's time.

18. Indeed, as Bristol notes in its Reply to Microsoft's Supplemental Submission in Opposition to Bristol's Motion for Attorneys' Fees and Costs [Dkt. No. 478], "Microsoft repeatedly argued that evidence concerning the 'entire relationship' between Bristol and

asserts, "[t]he central theme of Bristol's deceptive practice cases was always that Microsoft as the dominant supplier of desktop operating systems adopted WISE as a gambit to muscle its way into control of server and workstation operating systems." Dkt. No. 454 at 6; *see generally Bristol Tech., Inc. v. Microsoft Corp.*, 114 F.Supp.2d 59 (D.Conn.2000) (describing the factual background of the WISE Program vis-a-vis Bristol's deceptive CUTPA claim and an award of punitive damages). The court agrees with Bristol that a full factual background regarding the role of the WISE Program in the marketplace was necessary for the jury "to evaluate the nature and significance of the deception, and its probable consequences for Bristol." Dkt. No. 454 at 6. Furthermore, the promissory estoppel theory supporting Bristol's unfair CUTPA claim was related to the theory behind Bristol's deceptive claim: the theories are distinguishable primarily based on the former's requirement of a finding of reliance by Bristol.

The challenge faced by this court is to determine what are reasonable fees in this case in light of this mixed result. The cases speak in terms of prevailing on a "claim" or "theory." *See, e.g., Russell,* 200 Conn. at 194, 510 A.2d 972. The court notes that Bristol failed to prevail on its unfair CUTPA claim. Although brought under the same statute as its successful deceptive CUTPA claim, the theory of recovery on Bristol's unfair CUTPA claim was different. Bristol's unfair CUTPA claims rested on an "antitrust" theory in large measure while the deceptive CUTPA claim rested on a deception theory.[19]

The court is also charged to look at the goal the plaintiff pursued and determine if it succeeded, *i.e.,* determine whether Bristol secured redress for the injuries that prompted its claim. *Id.* Here, Bristol sought damages for injury to its business and an injunction requiring Microsoft to turn over its source code. Bristol did not obtain that redress. However, Bristol did obtain relief based on Microsoft's deceptive act or practice. It thus obtained one of its goals, but not all of its goals. Nevertheless, it is clear to the court from presiding over all pretrial matters and the trial, as well as its recent review of the court file and major pleadings, the trial transcript, transcript of all other proceedings and trials exhibits, that after clearly specific activities are identified and removed, the remaining items concern either the successful claim or are intertwined with or closely related to it.

The court therefore must reject Microsoft's claim that "[t]here is no reason why the parties would have needed to engage in extensive discovery and trial preparation in a case involving a single, straightforward, deception-based CUTPA claim." Dkt. No. 449 at 14. First, the court observes that this case involved a complex subject with fairly complex facts against an adversary who could reasonably be expected to, and did, vigorously litigate its defense on all fronts.[20] Second, because of the complex context in which Bristol alleged that Microsoft engaged in a deceptive act or practice, the court finds, after a review of the entire trial transcript in connection with the instant fee application, that the testimony of all of the witnesses, excepting those that Bristol voluntarily excluded from its fee application, was generally probative of Bristol's deceptive CUT-

---

Microsoft, and not just a 'handful' of documents and witnesses, was necessary to Bristol's CUTPA claim." *See* Dkt. No. 478 at 7 (quoting Dkt. No. 288 at 2–3).

**19.** As noted earlier, Bristol's other unfair CUTPA theory, promissory estoppel, was related to the deceptive act or practice claim. *See* page 77, *supra*.

**20.** Indeed, although the court does not have the benefit of the timesheets of Microsoft's counsel, the court did observe that at times there were eight, if not more, timekeepers in the courthouse during trial on behalf of Microsoft.

PA claim. Moreover, although some of the evidence and discovery matters, such as research on Linux and JAVA, may appear to be related only to Bristol's antitrust claims, it is clear to the court that this evidence was necessary for the jury to understand the context of Microsoft's deceptive statement.

The trial witnesses provide a good and substantial example of how most of the time spent in prosecuting Bristol's claims was related to, *inter alia*, the deceptive CUTPA claim.[21] There were 33 trial witnesses in total. Bristol has not sought fees related to six of these witnesses (Langlois, Stotsenberg, Elzinga, Rapp, Velltturo, and Hrinya), five of whom were expert witnesses on relevant market and damages. With the possible exception of parts of the testimony of Bristol president Chane Cullens, MacCrisken, Yeaton, and Miller (for a total of approximately 5 hours in a 24–day trial), the remaining witnesses testified in large, if not whole, measure to matters related to the deceptive CUTPA claim. That the witnesses' testimony was also, in large measure, relevant to Bristol's antitrust or unfair CUTPA claims does not provide a basis to disallow it. The court finds that these 27 remaining witnesses, and fees and costs spent in connection with them, were substantially incurred and related to the theory and claim on which Bristol prevailed.

**6. *Excessive or unreasonable hours/Johnson factors.*** The court finds that the fee entries submitted by Bristol are, on the whole, not excessive, redundant or otherwise unreasonable. Moreover, the court agrees with Bristol that its deceptive CUTPA claim based on Microsoft's deceptive statements regarding the WISE Program furthered a public interest, thereby effectuating the purpose behind CUTPA's private attorney general provisions. However, based on the following review of the *Johnson* factors applicable to CUTPA fee applications,[22] the court will account for any excessive or redundant fee entries through the aggregate percentage reduction identified below.

**a. *The time and labor required.*** The court recognizes that Bristol's attorneys logged thousands of hours in the litigation of this case. However, the court finds that the hours reported in Bristol's fee application generally do not overstate this effort. The court notes that Microsoft presented a vigorous defense, often necessitating the expenditure of additional labor and time by Bristol's counsel with regard to, for instance, Microsoft's refusal to agree to electronic production of documents. However, the court finds that the time spent by Bristol's counsel amounts to more than would be required to try a deceptive CUTPA claim. For example, Microsoft called several third-party witnesses, *e.g.*, Ross, Bernstein, Albutt, and

---

**21.** The court will assume familiarity with its Ruling on Punitive Damages which sets forth some of the record which would be useful in understanding Bristol's deceptive CUTPA claim. *See Bristol Tech., Inc. v. Microsoft Corp.*, 114 F.Supp.2d 59 (D.Conn.2000).

**22.** In determining the extent to which the court must examine the present fee application in light of the *Johnson* factors, the court finds guidance in the analysis of a recent Connecticut Appellate Court decision of the extent to which a court must apply the *Johnson* factors:

> The court in *Steiger* held only that in determining what is a reasonable attorney's fee award, the trial court abuses its discretion if it considers only one of the twelve factors and completely excludes and disregards all

of the others. [*Steiger v. J.S. Builders, Inc.*, 39 Conn.App. 32, 39, 663 A.2d 432 (1995) ]. Thus, the court in this case was not required to consider each of the twelve factors individually, but instead was required to consider the full panoply of factors and not base its decision solely on one of the elements.

*Riggio v. Orkin Exterminating Co., Inc.*, 58 Conn.App. 309, 318, 753 A.2d 423 (2000). Similarly, the court is mindful of the United States Supreme Court's observation "that many of these factors usually are submissions within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Klein, whose testimony may have been generally relevant as background for Bristol's deceptive CUTPA claim. However, it is the court's view that these witnesses were called in Microsoft's defense to Bristol's antitrust and unfair CUTPA claims. The court concludes that these witnesses' testimony and depositions are not reasonable and necessary to a trial of only a deceptive CUTPA claim.[23] Because the court finds that this excess is not fully accounted for by extracting the antitrust-only fee entries, the court will account for this excessive time in the percentage reduction that the court will impose below to the aggregate lodestar figure.

**b.** ***The skill requisite to perform the legal service properly, the customary fee for similar work in the community, and the experience, reputation and ability of the attorneys.*** The court finds that Bristol benefitted from excellent lawyering at each stage of this litigation. Otherwise, however, the court has addressed these factors above and accounted for these factors in its analysis of the hourly rates to be applied in this fee award, obviating the need for any further specific adjustments.

**c.** ***The preclusion of other employment by the attorney due to acceptance of the case and time limitations imposed by the client or the circumstances.*** The court appreciates that this case involved a substantial investment of time and human capital on the part of Bristol's attorneys, particularly to litigate the case on an expedited basis. However, these factors do not support either an upward or downward adjustment in their requested fees. The hourly rates and aggregate fee entries that compose the fee award to Bristol's attorneys adequately accounts, in the court's judgment, for these factors.

**d.** ***Whether the fee is fixed or contingent.*** The fact that Bristol's attorneys had a contingent upside interest in the outcome of this litigation bears little

weight as to whether the fee now requested, based on a lodestar figure derived from the attorneys' hourly rates, is excessive or otherwise unreasonable. As the Connecticut Superior Court noted in *Kay v. Seiden,* No. CV946048587S, 1999 WL 621460 (Conn.Super.Aug.4, 1999):

> *Johnson* indicated that fee arrangements are helpful in demonstrating the attorneys fee expectations. Such agreements should not dictate the court's award, however, since the criterion is not what the parties agreed to but what is reasonable. *Clark v. American Marine Corp.,* 320 F.Supp. 709, 711 (E.D.La.1970). The *Clark* court noted that conceivably a client could have agreed to a fixed fee which might be more than the court allows or the client can agree to a contingency fee representing a sum greater than the court might ultimately award.

1999 WL 621460, at *6; *see also Steiger,* 39 Conn.App. at 38, 663 A.2d 432 n. 5 (citing *Clark,* 320 F.Supp. at 711, *aff'd,* 437 F.2d 959 (5th Cir.1971)). With the specific adjustments made above, and the aggregate percentage reduction applied below, the court finds its award is reasonable.

**e.** ***The "undesirability" of the case.*** As was the case in *Kay,* "[t]his case did require fairly extensive factual investigation. Deception cases even under CUTPA are not easy to prove and the chances of success cannot certainly be promised." 1999 WL 621460, at *7. The case is not undesirable, however, and, as such, the court finds that this factor supports neither an upward nor downward adjustment of the fee award in this case.

**f.** ***The amount involved and the results obtained in this case and awards in similar cases.*** Bristol sought over $200 million in damages at trial and has

---

**23.** The court notes that these witnesses' testimony accounted for roughly a half-day of the 17 days of non-antitrust-only witnesses, or

approximately 3% of the trial time that Bristol claims as the basis for its fee application.

received only $1 in nominal damages.[24] However, as the court indicated in another context in an earlier ruling, *Bristol Tech.*, 114 F.Supp.2d 59, and as the court in *Kay* indicated, "the facts of this CUTPA deception case are somewhat unique so it is difficult to talk in terms of 'similar' cases." 1999 WL 621460, at *7. Moreover, the court has already discussed above the effect of the jury's rejection of Bristol's unfair CUTPA and antitrust claims on the fee award in this case. Furthermore, the court notes that, as discussed more fully above, the explicit language of Conn. Gen. Stat. § 42–110g(d) requires that the *Johnson* factor relating to the "results obtained" cannot be analyzed in CUTPA cases with reference to the dollar recovery.

However, the court finds guidance in the holding in *Russell* that "the size of his award should reflect his success, as determined by the trial court, in securing redress for the injuries that prompted his ... claim and reasonable legal cost incurred in pursuing this success." 200 Conn. at 195, 510 A.2d 972 (citation omitted). The court, therefore, concludes that, while CUTPA dictates that a fee award cannot be determined by the amount of dollar recovery, Bristol's fee award should be reduced to reflect its lack of success in securing the full redress that Bristol sought, *e.g.*, an injunction requiring Microsoft to turn over its source code.

**g. *The novelty or difficulty of the issues and the nature and length of the professional relationship with the client.*** Finally, the court finds that the *Johnson* factors for the novelty or difficulty of the questions in the case and the nature and length of the professional relationship with the client weigh neither for nor against the fees which Bristol has requested. Although this case was factually complex, no novel or particularly difficult legal issues were involved in Bristol's deceptive CUTPA claim. Moreover, because there was no preexisting professional relationship be-

tween Bristol and its trial counsel, O'Melveny & Myers cannot claim a higher fee by virtue of a special knowledge of the client that it brought to this litigation.

Having reviewed the *Johnson* factors, the court finds that some of the *Johnson* factors support a general downward adjustment in the aggregate fees requested in this case. In particular, the court finds Bristol's adjusted lodestar to be excessive based on the time Bristol's counsel devoted to the litigation which exceeded that which would be reasonable and necessary for a deceptive CUTPA claim and based on the limited success Bristol achieved relative to the more expansive goals and redress which Bristol sought in bringing its case against Microsoft.

On the other hand, the court's review of the entire fee application has revealed very few fee entries which, on their face, the court finds to be excessive or redundant. The court notes that Bristol withdrew its attorneys' travel time and that, despite Microsoft's objection to the employment of attorneys at three of O'Melveny & Myers's offices, the number of interoffice conferences was not excessive and actually less than the court would have expected. Moreover, coordination between Bristol's counsel in various locations was necessitated in part by the expedited schedule upon which the court insisted the parties proceed to try the case, albeit at Bristol's request due to the perception at the time that Bristol's corporate survival hung in the balance based on the outcome of this litigation. The court notes that Microsoft twice sought adjournments [Dkt. Nos. 97 & 146] of trial dates set by the court, citing its inability to prepare the case for trial in the time allotted by the court, despite having as counsel the largest firm in Connecticut and a quite capable New York City firm.

However, there are a few items which the court finds to be duplicative, excessive,

---

24. Of course, Bristol was also awarded $1,000,000 in punitive damages and injunc-

tive relief. *See Bristol Tech., Inc. v. Microsoft Corp.*, 114 F.Supp.2d 59 (D.Conn.2000).

or redundant. For example, although the amount of coordination between Bristol's attorneys and even counsel and support staff within O'Melveny & Myers was in the main quite reasonable, the court finds some redundancies in several fee entries. As such, to the extent that such entries appear, the aggregate percentage reduction identified below will reflect the court's decision to disallow these items.

7. *Final aggregate lodestar figure.* The court began with the unadjusted lodestar figure requested by Bristol for $4,663,895. After subtracting $5,918.50 for the amount of fee entries related entirely to Bristol's unsuccessful antitrust claims, and specific reductions of $112,000, $67,000, $13,500, and $21,500 for several categories of fee entries which related largely to Bristol's unsuccessful claims, the remaining lodestar figure is $4,443,976.50. The court further reduces this figure by 15% to account for the excessive hourly rates reported by certain O'Melveny & Myers timekeepers. Finally, the court will reduce this remaining lodestar figure by 30% to reflect other excessive, redundant or unreasonable entries discussed above. This results in a final fee award of $2,644,166.02 to Bristol in connection with the work of O'Melveny & Myers.

## C. Technology Law Network

In its modified fee application, Bristol has removed any fee entries for Anthony Clapes and Lisa Clapes that relate entirely to Bristol's unsuccessful antitrust claims. Bristol's total requested attorneys' fees for work performed by the Technology Law Network, before applying Bristol's 10% reduction, amounts to $495,122.

The court finds that the hourly rates charged by Anthony Clapes and Lisa Clapes are reasonable in comparison to the 'prevailing market rates' for the type of services rendered, *i.e.*, the fees that would be charged for similar work by attorneys of like skill in the area. Furthermore, applying the *Johnson* factors, the court finds that, on the whole, the fee entries for

Attorneys Clapes are not excessive, redundant, or otherwise unreasonable.

However, the court finds that fee entries totaling $800 should be excluded entirely as related solely to Bristol's antitrust claims. Moreover, a limited number of the fee entries for the Technology Law Network relate to items that will be reduced in accordance with the court's discussion above concerning O'Melveny & Myers requested fees. Thus, approximately $6,000 in fee entries relating to work on the legal aspect of the preliminary injunction that Bristol sought will be reduced 80% to $1,200, and approximately $11,500 worth of fee entries related to work on dispositive motions that were related to Bristol's antitrust claims and almost wholly unrelated to the deceptive CUTPA claim, including the estoppel theory used to support Bristol's unsuccessful unfair CUTPA claim, will be reduced 80% to $2,300. Finally, fee entries totaling approximately $2,200 for time spent on coordination and communication with the DOJ and the Conn. A.G. will be reduced by one-half (½) to $1,100. These reductions bring the total lodestar figure down to $479,222.

Furthermore, although Bristol excluded from its fee application most entries relating to damages, several entries appear throughout the fee application relating to damages issues, *e.g.*, work regarding the testimony of Cullens and Kenosha. Also, for the reasons discussed above regarding the fees requested for work performed by O'Melveny & Myers, the court will reduce the adjusted lodestar figure by 30% to adjust for other excessive, redundant or unreasonable entries and to reflect the partial success of Bristol's suit. The court therefore awards $335,455.40 to Bristol in connection with the work of the Technology Law Network.

## D. Mladen D. Kresic

■ The court declines, in the exercise of its discretion, to award Bristol attorneys' fees for the work of its general coun-

sel, Mladen D. Kresic. The court does not intend by this decision to suggest that the work performed by Attorney Kresic was not of importance to Bristol. However, the court finds that the purposes of CUTPA would not be advanced by awarding Bristol the fees of its general counsel, who did not participate as trial counsel in litigating, pre-trial or at trial, Bristol's CUTPA claim. *See Arthur D. Little Int'l v. Dooyang Corp.*, 995 F.Supp. 217, 225 (D.Mass.1998) (court denied fee award under Massachusetts Consumer Protection Act for plaintiff's general counsel on the grounds "that he was merely the client, a 'visible embodiment [thereof],'" that "he rarely (if ever) said anything [at sidebar during the trial] and conducted none of the examinations," and that "[h]e made no oral arguments, and participated at most in discussions of settlement").

### E. Whittemore Law Firm

The court also declines, in the exercise of its discretion, to award Bristol attorneys' fees for the work of the Whittemore Law Firm. The court finds these fee entries duplicative of the fees requested for O'Melveny & Myers and the Technology Law Network. The court does not mean to imply that the time spent by Attorney Whittemore III was not useful to Bristol. The court will nevertheless disallow these fees in their entirety to account for the redundancy the court finds in retaining additional counsel beyond the resources available to Bristol at O'Melveny & Myers and the Technology Law Network.

### III. COSTS

#### A. Legal Standards

As noted above, CUTPA expressly provides that "the court may award, to the plaintiff, in addition to the relief provided in this section, *costs* and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." Conn. Gen.Stat. § 42–110g(d) (emphasis added). Microsoft, however, argues that Bristol may only

be awarded taxable costs in accordance with federal law. The court is, of course, aware that parties are awarded taxable costs in federal court in accordance with 28 U.S.C. §§ 1821 & 1920–23, Fed.R.Civ.P. 54(b) and Local R. Civ. P. 17. In state court, Conn. Gen.Stat. § 52–257(b) provides for taxable costs. CUTPA, however, authorizes the award of costs over and above these taxable cost provisions. *See, e.g., Boulevard,* 868 F.Supp. at 73; *Boulevard Assocs. v. Sovereign Hotels, Inc.,* 861 F.Supp. 1132, 1139 (D.Conn.1994); *Kerrigan v. DiPietro–Kay Corp.,* No. CV 920518353S, 1996 WL 457161 (Conn.Super. July 19, 1996).

The issue of whether a federal court sitting in diversity should apply a state statute awarding costs other than the taxable costs covered by other state or federal statutes or procedural rules was recently analyzed by the Court of Appeals for the Tenth Circuit. The court finds the Tenth Circuit panel's reasoning persuasive in this context:

> [T]here is ... no federal statute or rule providing the rule of decision when a federal court is asked to award litigation expenses other than those enumerated as section 1920 costs.... In the present case, to the extent the Colorado statute authorizes the award of "actual costs" other than those costs authorized by 28 U.S.C. §§ 1821, 1920–23, or another federal statute or rule, those costs are not barred by Fed.R.Civ.P. 54(d)(1).
>
> . . .
>
> If federal courts did not employ the Colorado cost-shifting statute, that could substantially alter the amount of money an unsuccessful defendant would have to pay a successful plaintiff—a significant difference in outcome between the state and the federal courts....

*Garcia v. Wal–Mart Stores, Inc.,* 209 F.3d 1170, 1176–78 (10th Cir.2000) (citations, internal quotation marks, and footnotes omitted); *accord Baker v. Power Secs. Corp.,* 174 F.R.D. 292, 294 (W.D.N.Y.1997)

("Except in rare circumstances in which some important state interest is implicated, however, the awarding of costs in an action in federal court is controlled by federal law, specifically Rule 54 and 28 U.S.C. §§ 1821 and 1920." (citations omitted)); *see generally* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* Civil 3d § 2669 (1998 & 2000 Supp.); 20 *Am. Jur.*2d Costs § 10 (1995 & 1999 Supp.). Because CUTPA provides for the award of costs beyond the taxable costs controlled by federal rules or statutes and because no such federal rule or statute conflicts with Connecticut's substantive policy of providing costs to CUTPA plaintiffs to further CUTPA's remedial purpose, the court finds that it should apply CUTPA's provision under Conn. Gen.Stat. § 42–110g(d) to award costs to Bristol at its discretion. Microsoft's objection is therefore overruled.[25]

### B. O'Melveny & Myers

The court finds the costs requested by Bristol in connection with disbursements paid by O'Melveny & Myers to be necessary and reasonable in their entirety with the following exceptions. The court finds that $.50/page is an excessive charge for facsimiles and accordingly reduces the disbursements awarded for such costs by half, to $.25/page. The court will also allow all of O'Melveny & Myers's disbursements for delivery services, except for those associated with packages sent to Langlois and Barnett. Costs for travel, deposition transcripts, and expert witness fees are also allowed, except for those associated with the travel or other expenses involving expert witnesses, *e.g.,* Stotsenberg, Langlois, Barnett, and Schmalansee, whose fees have been disallowed or not claimed in Bristol's CUTPA fee application. Court fees and local counsel fees will also be disallowed in connection with an attempted intervention in a case involving Microsoft in the District of Utah.

The court further notes that Bristol itself applies a 10% reduction to each of its requests for costs, in order to approximate "a reasonable discount for [costs] that would not have been required if Bristol's case had been limited to a CUTPA theory other than a violation of a antitrust policy." Dkt. No. 444 at ¶ 7. The court finds that a reduction of 30% is required to approximate the lower costs that would have been reasonably incurred had Bristol pursued only a deceptive CUTPA claim against Microsoft. The court therefore awards $212,714.57 of the costs that Bristol seeks for disbursements by O'Melveny & Myers.

### C. Technology Law Network

After review, the court finds the costs requested by Bristol in connection with disbursements paid by the Technology Law Network to be necessary and reasonable in their entirety. However, as with the costs that Bristol requests for disbursements by O'Melveny & Myers, the court will reduce the costs awarded for disbursements by the Technology Law Network by 30%, and, accordingly, the court awards Bristol costs of $29,829.28.

### D. Mladen D. Kresic

For the same reasons that the court has denied Bristol attorneys' fees in connection

---

**25.** The court also rejects any waiver or abandonment argument that Microsoft may be seeking to raise in Microsoft's Supplemental Memorandum in Opposition to Bristol's Motion for Attorneys' Fees and Costs [Dkt No. 474], wherein Microsoft claims that "Bristol acknowledges in its reply brief that the items in its claimed 'disbursement request' (PX 3500B) are either 'not recoverable' or exceed limits under federal or state statutory taxable cost provisions." Dkt. No. 474 at 3 (quoting Dkt. No. 454 at 8).

In fact, Bristol's reply brief states that "Microsoft mistakenly asserts that certain cost items in Bristol's application are not recoverable or exceed limits under federal or state statutory taxable cost provisions." Dkt. No. 454 at 8 (quoting Dkt. No. 449 at 24) (emphasis added). The court obviously will not credit such an inexcusable attempt through misleading, partial quotation to attribute acquiescence by Bristol in Microsoft's positions.

with the work of Bristol's general counsel Kresic, the court exercises its discretion to deny the costs requested by Bristol in connection with disbursements paid by Kresic. The travel and courier expenses should not be allowed under CUTPA for Bristol's general counsel, and the court does not find disbursements for temporary legal support services and the purchase of video equipment reasonable and necessary for this litigation, particularly in light of the resources available to Bristol through its representation by O'Melveny & Myers and the Technology Law Network.

## E. Bristol Technology

The court finds the costs requested by Bristol in connection with its own disbursements to be necessary and reasonable in their entirety with the following exceptions. It is appropriate for Bristol to claim reimbursement for these disbursements made on its own behalf because these costs are in the nature of litigation expenses, *e.g.*, expert witness fees, which are often incurred by counsel on behalf of the client. However, disbursements by Bristol in connection with Bristol's local counsel for purposes of seeking to lift protective orders in other cases involving Microsoft are unnecessary and unreasonable, and the court finds that disbursements for office supplies are part of the overhead encompassed in attorneys' hourly rates and therefore are not appropriately reimbursed as separate litigation expenses. Finally, the court denies Bristol costs in connection with its travel expenses, for which it has provided no documentary backup. There has been no showing to support allowing Bristol's

26. The reduction Bristol identified as anti-trust-only has been subtracted from this figure, but not Bristol's suggested 10% reduction.

27. The reduction Bristol identified as anti-trust-only has been subtracted from this figure, but not Bristol's suggested 10% reduction.

28. The reduction Bristol identified as anti-trust-only has been subtracted from this fig-

transportation expenses as reasonable and necessary costs of litigation. After subtracting these excluded disbursements, and applying the 30% reduction discussed above, the court will award Bristol $508,262.82 for its costs reasonably and necessarily incurred in connection with its deceptive CUTPA claim.

## IV. SUMMARY

A. **O'Melveny & Myers—Fees**

| | |
|---|---|
| Bristol's lodestar figure: [26] | $ 4,663,895.00 |
| Court's reduction for anti-trust-only fees: | - $ 5,918.50 |
| Reduced fees for preliminary injunction: | - $ 112,000.00 |
| Reduced fees for pre-trial motions: | - $ 67,000.00 |
| Reduced fees for work with DOJ/Conn. A.G.: | - $ 13,500.00 |
| Excluded entries regarding other Microsoft cases: | - $ 21,500.00 |
| Reduction of 15% for excessive hourly rates: | - $ 666,596.48 |
| Reduction of 30% for unrelated or excessive items: | - $ 1,133,214.00 |
| **Total award:** | **$ 2,644,166.02** |

B. **Technology Law Network—Fees**

| | |
|---|---|
| Bristol's lodestar figure: [27] | $ 495,122.00 |
| Court's reduction for anti-trust-only fees: | - $ 800.00 |
| Reduced fees for preliminary injunction: | - $ 4,800.00 |
| Reduced fees for pre-trial motions: | - $ 9,200.00 |
| Reduced fees for work with DOJ/Conn. A.G.: | - $ 1,100.00 |
| Reduction of 30% for unrelated or excessive items: | - $ 143,766.60 |
| **Total award:** | **$ 335,455.40** |

C. **Mladen D. Kresic—Fees**

| | |
|---|---|
| Bristol's lodestar figure: [28] | $ 192,309.00 |
| **Total award:** | **$ 0.00** |

D. **Whittemore Law Firm—Fees**

| | |
|---|---|
| Bristol's lodestar figure: [29] | $ 55,800.50 |
| **Total award:** | **$ 0.00** |

E. **O'Melveny & Myers—Costs**

| | |
|---|---|
| Total requested costs: [30] | $ 318,115.73 |
| Excluded costs: | - $ 14,237.77 |

ure, but not Bristol's suggested 10% reduction.

29. The reduction Bristol identified as anti-trust-only has been subtracted from this figure, but not Bristol's suggested 10% reduction.

30. This figure does not include Bristol's suggested 10% reduction.

Reduction of 30% for unrelated or excessive items: - $ 91,163.39
    Total award: $ 212,714.57

**F. Technology Law Network—Costs**
Total requested costs: [31] $ 42,613.26
Reduction of 30% for unrelated or excessive items: - $ 12,783.98
    Total award: $ 29,829.28

**G. Mladen D. Kresic—Costs**
Total requested costs: [32] $ 16,548.31
    Total award: $ 0.00

**H. Bristol Technology—Costs**
Total requested costs: [33] $ 918,698.10
Excluded costs: - $ 192,608.35
Reduction of 30% for unrelated or excessive items: - $ 217,826.93
    Total award: $ 508,262.82

## V. CONCLUSION

The court finds that Bristol should be awarded reasonable and necessary attorneys' fees pursuant to Conn. Gen.Stat. § 42–110g(d) in the amount of $2,979,621.42. The court further finds that Bristol should be reimbursed its costs in the amount of $750,806.67, in accordance with the provisions of Conn. Gen.Stat. § 42–110g(d).

**SO ORDERED.**

---

31. This figure does not include Bristol's suggested 10% reduction.

32. This figure does not include Bristol's suggested 10% reduction.

33. This figure does not include Bristol's suggested 10% reduction.