169 F.3d 99
 Marion K. ALDERMAN, Plaintiff-Appellant,
v.
PAN AM WORLD AIRWAYS; Pan Am World Services and Alert
Management Systems, Defendant-Third-Party-Plaintiffs,
United States of America, Third-Party-Defendant,
Mark Aalyson, Appellee.
 Docket No. 98-7330
 United States Court of Appeals,
Second Circuit.
 Submitted Oct. 21, 1998.
Decided Feb. 16, 1999.
 
 1
 Daniel Chapman, Miller, Sisson, Chapman & Nash, P.C. f/k/a Messrs. Gunn, Lee & Miller, San Antonio, TX, for Plaintiff-Appellant.
 
 
 2
 David P. Shouvlin, Porter, Wright, Morris & Arthur, Columbus, OH, for Appellee.
 
 
 3
 Before: WALKER and McLAUGHLIN, Circuit Judges, and PRESKA, District Judge.*
 
 PRESKA, District Judge:
 
 4
 Plaintiff-appellant Marion K. Alderman appeals from an order entered January 20, 1998 in the United States District Court for the Eastern District of New York (Platt, J.), which directed release of escrowed funds in favor of appellee Mark Aalyson, an attorney, the court having enforced the contingency-fee retainer agreement. In enforcing the agreement, the district court determined that Alderman had no grounds to dispute the agreement as there had been no fraud in the inducement.
 
 
 5
 For the reasons that follow, we affirm.
 
 BACKGROUND
 
 6
 The dispute leading to the instant appeal arose out of the representation of Alderman by the law firm of Kreindler & Kreindler ("Kreindler") and Aalyson, an attorney admitted to practice in Ohio. Alderman had brought a wrongful death suit against Pan Am World Airways and others for deaths occurring in the crash of Pan American Flight 103 over Lockerbie, Scotland on December 21, 1988. See Alderman v. Pan Am, Nos. 90-CV-376, -377 (E.D.N.Y. filed Jan. 30, 1990). Alderman was appointed administratrix for the estates of her daughter, Paula Alderman Bouckley, and her son-in-law, Glenn Bouckley.
 
 
 7
 In April of 1989, Alderman entered into an agreement retaining Kreindler and Aalyson (the "Agreement"). As to fees, the agreement provides that Kreindler would "receive an amount equal to 20% of the excess of the net recovery ... over $75,000 and [that] Mark Aalyson will receive an amount equal to 5% of the excess of the net recovery over $75,000." Alderman signed the agreement at her New York home and returned it to Kreindler. Thereafter, Aalyson signed the agreement at his Ohio office.
 
 
 8
 Although Alderman and Aalyson dispute how Alderman was introduced to Kreindler, it is undisputed that Aalyson, who is not only an attorney but an airline pilot, accompanied Lisa Alderman and Gary Taylor to a meeting with Kreindler in New York, and asked questions. Following the meeting with Kreindler, Aalyson did not have any further direct contact with the Alderman family. Aalyson alleges, however, that "[t]he Aldermans asked him to stay involved in the case to give advice, review pleadings, correspondence and the like...."
 
 
 9
 Kreindler assumed the substantial part of Alderman's representation. As to Aalyson, the parties dispute whether Aalyson performed work other than attending the initial consultation with Kreindler. Although he did not keep any time sheets, Aalyson contends that he spent 75 to 100 hours preparing for and reviewing matters related to the case.
 
 
 10
 In September of 1995, Pan Am and the other defendants settled each wrongful death claim for $1,150,000. Kreindler thereafter received payment of its 20% contingent fee and placed the amount representing Aalyson's portion of the contingent fee in escrow.
 
 
 11
 Aalyson's portion of the proceeds, $48,639.68, was disputed by Alderman, who refused to release the funds on the ground that the fee was excessive for the amount of work performed by Aalyson. After repeated attempts to obtain his fee, Aalyson contacted the district court pursuant to General Rule 37.2 of the Eastern District of New York, requesting that the court enforce the Agreement. The district court held a hearing and, by Order dated January 15, 1998, found that the Agreement was enforceable and directed Kreindler to release the funds to Aalyson.
 
 
 12
 This appeal followed.
 
 DISCUSSION
 I. Jurisdiction
 
 13
 As a preliminary matter, we confirm the district court's jurisdictional basis for reviewing the attorney fee dispute. Federal courts may exercise supplemental jurisdiction "to hear fee disputes between litigants and their attorneys when the dispute relates to the main action." Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251, 256 (2d Cir.1988) (permitting the exercise of ancillary jurisdiction over a fee dispute between a law firm and a corporate takeover artist where the underlying suit arose from a takeover attempt) (citations omitted); see In re "Agent Orange" Prod. Liab. Litig. (Attorneys' Fee Awards), 818 F.2d 226, 237 (2d Cir.1987). The Eastern District of New York adjudicated the underlying suit regarding wrongful death damages and was already familiar with the relevant facts and legal issues. See Alderman, Nos. 90-CV-376, -377. As such, that court properly exercised supplemental jurisdiction over the attorney fee claim arising from that dispute. See Chesley v. Union Carbide Corp., 927 F.2d 60, 64-65 (2d Cir.1991).
 
 
 14
 Our jurisdiction on appeal is pursuant to 28 U.S.C. § 1291.
 
 II. Standard of Review
 
 15
 "The standard of review of an award of attorney's fees is highly deferential to the district court." Mautner v. Hirsch, 32 F.3d 37, 38 (2d Cir.1994) (citing Seigal v. Merrick, 619 F.2d 160, 161 (2d Cir.1980)). This standard takes into account that the amount sought for attorney's fees is dependent on the unique facts of each case. See id. Attorney's fees must be reasonable in terms of the circumstances of the particular case, and the district court's determination will be reversed on appeal only for an abuse of discretion. See Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir.1994) (per curiam); In re Agent Orange, 818 F.2d at 237.
 
 III. Character of the Agreement
 
 16
 The parties initially dispute the character and subsequent consequences of the Agreement. Alderman contends that the Agreement is akin to a contingent fee agreement. Aalyson, however, contends that the relevant portion of the Agreement is akin to a fee sharing or splitting agreement between attorneys Aalyson and Kreindler and therefore Alderman lacks standing to appeal because she has no claim to the funds owed to Aalyson. The district court concluded that the Agreement was a contingent fee agreement. Essentially, the Agreement defines what percentage of the award, if any, Kreindler and Aalyson will receive from the recovery in the underlying suit. See Burlington v. Dague, 505 U.S. 557, 561, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (a fee "is contingent if the obligation to pay depends on a particular result[ ] being obtained"); Model Rules of Professional Conduct Rule 1.5(c) (1995) ("[a] fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited"). The plain wording of the Agreement supports the district court's finding that the Agreement is best characterized as an agreement for attorney's fees contingent on a successful outcome, under which the fees are to be split between Kreindler and Aalyson.
 
 IV. Enforcement of the Agreement
 
 17
 Alderman asserts that the district court was required to scrutinize the reasonableness of Aalyson's requested fee in light of the services performed. In response, Aalyson contends that the Agreement is enforceable because Alderman consented to the sharing of fees, the overall fee was reasonable and Aalyson performed some work in the case. The district court examined the evidence and concluded that the Agreement was enforceable.
 
 
 18
 Courts have broad authority to refuse to enforce contingent fee arrangements that award fees that exceed a reasonable amount. See Blanchard v. Bergeron, 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); Krause v. Rhodes, 640 F.2d 214, 219 (6th Cir.1981) (a contract for contingent fees "should always be subject to the supervision of a court, as to its reasonableness"). However, we have recognized that a contingency agreement is "the freely negotiated expression both of a [client's] willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment." Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir.1990) (discussing contingency fees in social security case context). Therefore, a court should seek to enforce the parties' intentions in a contingent fee agreement, as with any contract. See Stissi v. Interstate & Ocean Transp. Co., 814 F.2d 848, 851 (2d Cir.1987) (enforcing intent of agreement between attorneys to share fees); McKenzie Constr., Inc. v. Maynard, 758 F.2d 97, 101 (3d Cir.1985) ("[C]ourts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties."). Pointedly, the Supreme Court has noted that, "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (awarding attorney fees under § 1983).
 
 
 19
 The district court's assessment of a reasonable fee must begin with the agreement itself. See Stissi, 814 F.2d at 851. The reasonableness of a contract, including an attorney fee agreement, is to be evaluated at the time it was made. See Mar Oil, S.A. v. Morrissey, 982 F.2d 830, 838-39 (2d Cir.1993); Levine v. Angus, No. 92-CIV-2210, 1993 WL 227713, at * 2 (S.D.N.Y. June 22, 1993), aff'd, 41 F.3d 1502 (2d Cir.1994) (contingency fee arrangement for royalties earned was reasonable). But see McKenzie Constr., 758 F.2d at 101 (court should consider not only reasonableness at the time of contracting but also negotiation and performance). The district court determined that the total amount of attorneys' fees specified in the Agreement was reasonable at the time of contracting.
 
 
 20
 "Federal courts apply state law when ruling on the interpretation of contractual attorney fee provisions." Shure v. Vermont (In re Sure-Snap Corp.), 983 F.2d 1015, 1017 (11th Cir.1993); see 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4511 (2d ed.1996); cf. Cotton v. Slone, 4 F.3d 176, 180 (2d Cir.1993). The parties disagree as to whether New York law or Ohio law governs the validity of the Agreement. Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply New York's choice-of-law rules. See Guaranty Trust Co. v. York, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York's choice-of-law rules, the interpretation and validity of a contract is governed by the law of the jurisdiction which is the "center of gravity" of the transaction. See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539-40 (2d Cir.1997). Although Aalyson signed the Agreement in Ohio, the Agreement was drafted, negotiated and signed by Kreindler and Alderman in New York. Therefore, the "center of gravity" of the contractual relationship between Alderman, Aalyson, and Kreindler was New York, and New York law rather than Ohio law governs the interpretation and validity of the Agreement. See id.
 
 
 21
 Under New York law, it is well established that an agreement between attorneys for division of a legal fee is valid and is enforceable in accordance with terms set forth in agreement, provided that each party actually contributed some work, labor and service toward earning of the fee and "there is no claim that either refused to contribute more substantially." Benjamin v. Koeppel, 85 N.Y.2d 549, 556, 626 N.Y.S.2d 982, 650 N.E.2d 829 (1995) (quotation and citation omitted); see Stissi, 814 F.2d at 851. As previously noted, the Agreement at issue is a contract between a client and two attorneys for fees, rather than an agreement strictly between attorneys. Nonetheless, it is rational to extend to this Agreement the rule that an agreement for contingent fees that includes a provision for dividing legal fees is enforceable in accordance with its terms. The Agreement, providing that Alderman must pay contingent fees to both Kreindler and Aalyson, is valid and enforceable as to Aalyson, provided that he contributed "some work" toward earning the fee. More involvement is required of a referring attorney than merely having recommended the subsequent lawyer. See Nicholson v. Nason & Cohen, P.C., 192 A.D.2d 473, 597 N.Y.S.2d 23, 24 (1st Dep't 1993); ABA Comm. on Professional Ethics and Grievances, Formal Op. No. 97 (1933) (a mere recommendation is an insufficient basis for receiving compensation). The sharing of work or responsibility may be rendered even by correspondence. See Formal Op. No. 97.
 
 
 22
 The facts indicate that Aalyson performed "some work." The parties do not dispute that Aalyson visited Kreindler's office in New York with Lisa Alderman and Gary Taylor and asked questions; however, whether Aalyson performed other work is disputed. While Aalyson's failure to keep time sheets is not admirable, the lack of documentation is not fatal to his case. See Ward v. Brown, 899 F.Supp. 123, 129 n. 3 (W.D.N.Y.1995) (not unreasonable for plaintiff's attorneys operating under a contingent fee agreement not to have contemporaneous time records).
 
 
 23
 The district court noted that the overall fee of 25% of the net recovery over $75,000 was reasonable. Of this, Aalyson was entitled to 5%, or $48,639.68 plus interest. In its examination, the district court questioned witnesses as to standard practice, determining that Alderman's arrangement was "typical" of other Lockerbie cases the firm handled.[1] See Anderson v. SAM Airlines, 939 F.Supp. 167, 170 (E.D.N.Y.1996) (no basis for attorney to claim contingency fee on first $75,000 to which decedent's estate is entitled under Warsaw Convention); cf. Wells, 907 F.2d at 369 (social security administration guidelines provide that "a reasonable fee ... [is] not in excess of 25% of the total" award). The parties to the Agreement intended to construct a contingent fee agreement whereby Alderman expected to pay total fees of 25% of a specified recovery, of which Aalyson was entitled to 5%. Further, the Agreement accounted for the attorneys' risk that the plaintiff might not have recovered more than $75,000 for each decedent. See Warsaw Convention, Oct. 12, 1929 & modified May 18, 1966, art. 22(1), 49 Stat. 3000, reprinted in 49 U.S.C. § 40105 note; see also 520 E. 72nd Commercial Corp. v. 520 E. 72nd Owners Corp., 691 F.Supp. 728, 738 (S.D.N.Y.1988) (a risk premium as reflected in the contingent fee percentage must be proportionate to the risk being borne by the lawyer), aff'd, 872 F.2d 1021 (2d Cir.1989). We agree with the district court's finding that Aalyson is entitled to fees pursuant to the Agreement and can find no evidence that the district court abused its discretion by enforcing the written contract in accordance with its terms.
 
 CONCLUSION
 
 24
 In sum, we hold that: (1) the district court properly exercised supplemental jurisdiction over the attorney fee dispute; (2) the Agreement at issue provided for attorneys' fees to be paid on a contingency basis; (3) the Agreement is enforceable by its terms as a reasonable agreement for which appellee performed "some work." Accordingly, the order of the district court is affirmed.
 
 
 
 *
 The Honorable Loretta A. Preska, Judge of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The district court held a hearing regarding the reasonableness of the Agreement, although such an evidentiary hearing is not always required. See Walz v. Town of Smithtown, 46 F.3d 162, 170 (2d Cir.1995)