VIVA VIDEO, INC., A California Corporation and Viva Productions, Inc., A Philippine Corporation, Plaintiffs–Appellees,

v.

Ray CABRERA, also known as Reynaldo Cabrera and Almira Cabrera, also known as Mira Cabrera, individually and doing business as M. Amit, Celebrity Video and Miramar, Inc., Defendants–Appellants,

Mike Garcia, also known as Ike Garcia and Enrique Garcia, Electrotech Trading Corp., Ronmel Ocampo, Frank Oliver, Luz Oliver, individually and doing business as Luz–Vi–Minda and Jeremy L. Paule, individually and doing business as Mabuhay Silagan Store, Defendants.

Nos. 00–7947(L), 00–9207(CON).

United States Court of Appeals, Second Circuit.

May 25, 2001.

Frank J. Colucci, Colucci & Umans; Kathleen M. McGann, of counsel, New York, NY, for appellants.

Andrew J. Stern; Kenneth W. Levitt, of counsel, Beverly Hills, CA, for appellees.

Present STRAUB, POOLER, Circuit Judges, and KORMAN, District Judge.[*]

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the June 21, 2000 order of the District Court is hereby AFFIRMED and the August 28, 2000 order of the District Court is hereby VACATED and the case is REMANDED.

Defendants–Appellants Ray and Almira Cabrera (collectively "Cabreras") appeal from separate orders of the United States District Court for the Eastern District of New York (John Gleeson, *Judge*) (1) denying in part and granting in part their motion for attorneys' fees after they prevailed in an action brought by Plaintiffs–Appellees Viva Video, Inc. and Viva Productions, Inc. (collectively "Viva") under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and (2) denying their recovery of the attorneys' fees to which the court initially found they were entitled because they failed adequately to document the amount of those fees.

Viva brought this action alleging that the Cabreras and others violated the Copyright Act by selling counterfeit and unauthorized Viva videotapes. On the day that it filed the action, Viva successfully moved *ex parte* for a temporary restraining order and an order of seizure and impoundment. In support of this motion, Viva submitted the affidavit of its president, Ernani Pangilinan ("Pangilinan"), without informing the District Court that Pangilinan had not himself signed the affidavit. Instead, a member of Viva's law firm had signed the affidavit in Pangilinan's name, and Viva's counsel, Richard R. Zayas, had notarized the affidavit as if it had been signed by Pangilinan. Pangilinan represented that he had signed a faxed draft of the affidavit and had authorized his attorneys to execute the original. Subsequently, after a hearing at which Viva failed to show a likelihood of success on the merits, the District Court denied Viva's motion for a preliminary injunction against the Cabreras. As a result, Viva agreed to withdraw its claims against the Cabreras with prejudice. The Cabreras then moved, as "prevailing parties," for attorneys' fees under 17 U.S.C. § 505.

In a March 31, 2000 report and recommendation, Magistrate Judge Cheryl L. Pollak recommended denying in part the Cabreras' motion for fees, finding that Viva had not filed an action "that was totally without support at the time it was initiated or that was lacking in objective reasonableness at the time the suit was commenced." However, finding that "the presentation of an affidavit bearing what purported to be Pangilinan's signature, without further explanation, was objectively unreasonable under any reasonable standard," the Magistrate Judge recommended granting fees "for the time expended exploring and pursuing" the Pangilinan affidavit issue. Because, however, the Cabreras' request for fees was not accompanied by sufficient contemporaneous time records, the magistrate recommended that the Cabreras be ordered to submit documentation indicating what portion of the requested costs was incurred in connection with the Pangilinan affidavit. In a June 21, 2000 order the District Court adopted the magistrate judge's report and recommendation in its entirety.

[*] The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

The Cabreras thereupon submitted their counsel's computerized time sheets, a letter estimating the portion of their total fees that was attributable to the Pangilinan affidavit issue, and a second letter explaining why it was difficult to calculate more precisely what portion was attributable to that issue. The Magistrate considered these submissions and issued another report and recommendation dated August 4, 2000. The Magistrate recommended denying the Cabrera's request for fees, finding that the Cabreras' submissions failed to comply with the requirements of this Court, set forth in *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). According to the Magistrate, the court still lacked contemporaneous time records "from which to ascertain whether defendants' 'estimate' of costs and fees is reasonable." The Magistrate declined to give the Cabreras another chance to supplement their application for fees, since their initial application itself was deficient in that it did not include contemporaneous time records. The District Court adopted the recommendation on August 28, 2000, and this timely appeal followed.

 "The standard of review of an award of attorney's fees is highly deferential to the district court." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir.1999) (internal quotation marks omitted). "Attorney's fees must be reasonable in terms of the circumstances of the particular case, and the district court's determination will be reversed on appeal only for an abuse of discretion." *Id.* " 'Abuse of discretion' is one of the most deferential standards of review; it recognizes that the district court, which is intimately familiar with the nuances of the case, is in a far better position to make certain decisions than is an appellate court, which must work from a cold record." *In*

*re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir.1992) (per curiam). However, "[a] district court necessarily abuses its discretion if its conclusions are based on an erroneous determination of law or on clearly erroneous factual findings." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir.2000); *see also Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1012 (2d Cir.1995) (noting that this Court may reverse an award of attorneys' fees "if the district court applied the wrong legal standard" (citations omitted)).

Section 505 of the Copyright Act provides that

> [i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. In *Fogerty v. Fantasy*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court held that the standard governing the award of attorneys' fees under section 505 should be identical for prevailing plaintiffs and prevailing defendants. In *dicta*, the Court noted that "[t]here is no precise rule or formula for making [attorneys' fees] determinations, but instead equitable discretion should be exercised," *id.* (internal quotation marks omitted), and then proceeded to list several nonexclusive factors courts should consider when exercising this discretion, namely, "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," *id.* at 534 n. 19, 114 S.Ct. 1023 (internal quotation marks omitted). *See also Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116,

121–22 (2d Cir.2001) (applying *Fogerty* and according special weight to its objective unreasonableness prong).

■ First, we affirm the District Court's June 21, 2000 order denying fees in part and granting fees in part. We find that the District Court did not exceed its allowable discretion in denying the Cabreras' motion for attorneys' fees with regard to general objective unreasonableness and bad faith. Although Viva apparently conducted its case quite poorly and was unable to support its claims against the Cabreras, the District Court, which was "intimately familiar with the nuances of the case," *Bolar*, 966 F.2d at 732, was within its discretion in finding that Viva's claims were not "lacking in objective reasonableness at the time the suit was commenced." Viva's inability to substantiate any of its allegations certainly *could* have led the District Court to award fees; but that inability does not as a matter of law *require* an award of fees, given the court's finding that Viva's action had some support at the time it was initiated. Likewise, the court's finding that Viva's conduct during the litigation was not intended to harass the Cabreras or deceive the court or the Cabreras' counsel is not clearly erroneous.

■ With regard to the Pangilinan affidavit, we agree that Viva's conduct warrants an award of fees. *See Matthew Bender & Co.*, 240 F.3d at 125 ("bad faith in the conduct of the litigation is a valid ground for an award of fees"). However, we find odd the court's characterization of Viva's conduct in this regard as "objectively unreasonable." "Objective unreasonableness" is generally used to describe claims that have no legal or factual support. The type of litigation misconduct that occurred here is more properly labeled "bad faith." We must also take issue with the Magistrate's varying directives regarding the extent of fees recoverable as a result of the Pangilinan affidavit. The Magistrate initially awarded fees for the additional litigation needed to "ferret out the underlying circumstances," then asked the Cabreras to submit documentation indicating what portion of their fees claimed "can reasonably be attributed" to the affidavit. The additional work needed to "ferret out" the true circumstances of the affidavit essentially consisted of nothing more than one question at one deposition; however, we do not feel that the Cabreras' fees should be so limited. The Cabreras should recover an award of fees for the totality of the work that resulted from the forged affidavit. *See Matthew Bender*, 240 F.3d at 126 (holding that fees awarded for misconduct "should be related to costs or expenses incurred as a direct result of bad faith conduct").

Second, we vacate the District Court's August 28, 2000 order denying fees in relation to the Pangilinan affidavit issue and remand the case for further proceedings consistent with this order. We are unable to determine whether the District Court's denial of fees on the affidavit issue was based on a failure by the Cabreras to submit proper documentation or on the court's disagreement with the reasonableness of the amount of fees requested. In her August 4, 2000 report, the Magistrate first noted that the court "still ha[d] no contemporaneous time records from which to ascertain whether defendants' 'estimate' of costs and fees is reasonable." The Magistrate then went on to question the reasonableness of the Cabreras' estimate, noting that the "time spent in preparing an answer to the complaint and in attending certain depositions, including those of the defendants, is obviously not attributable to any investigative work or motions required to ferret out the circumstances behind the

Pangilinan affidavit." It is thus unclear whether the court rested on the Cabreras' failure to submit sufficient documentation or on a disagreement with the amount and nature of fees requested.

To the extent the court denied fees because the Cabreras failed to provide sufficient documentation, we find the Magistrate's conclusion puzzling, given that the Cabreras provided computerized time records listing, in some detail, the date, attorney, rate, hours expended, and description of work done. *See New York Ass'n for Retarded Children*, 711 F.2d at 1148 (holding that before fees may be awarded, court must have "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done"). The Cabreras then complied with the court's order to file documentation "indicating what portion of the fees and costs incurred were attributable to the litigation surrounding" the Pangilinan affidavit. While the Cabreras relied on an estimate, we fail to see how they could have arrived at a more exact number because the effect of the forged affidavit cannot be measured in exact terms. The Cabreras were prejudiced by Viva's bad faith to the extent that the Cabreras' counsel performed litigation activities he would not have performed had Viva's counsel openly informed the court of the true circumstances of the Pangilinan affidavit's execution.

To the extent the court found the Cabreras' request unreasonable, as noted above, we do not agree that the Cabreras' recovery should be limited to the fees for the additional litigation needed to "ferret out the underlying circumstances." Thus, on remand, the District Court should determine the totality of what resulted from Viva's submission of the Pangilinan affidavit. Certainly, it would be helpful to the District Court if the Cabreras better ex-plained how the litigation activities for which they claim fees are related to the Pangilinan affidavit.

Accordingly, we AFFIRM the June 21, 2000 order of the District Court, VACATE the August 28, 2000 order of the District Court, and REMAND the case so that the District Court may determine a reasonable amount of fees to award in connection with the Pangilinan affidavit issue.