15-0563-cv, 15-3212-cv

*Dynamic Concepts, Inc., et al. v. Tri-State Surgical Supply and Equipment, Ltd., et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of November, two thousand seventeen.

Present:  PETER W. HALL,
          CHRISTOPHER F. DRONEY,
                  *Circuit Judges*,
          ALISON J. NATHAN,[*]
                  *District Judge.*

_____

DYNAMIC CONCEPTS, INC.

                  *Plaintiff-Appellant*,

POINT 4 DATA CORPORATION,

                  *Plaintiff-Counter-Defendant-Appellant*,

          v.                                    15-0563-cv

_____

[*] Judge Alison J. Nathan, of the United States District Court for the Southern District of New York, sitting by designation.

TRI-STATE SURGICAL SUPPLY AND EQUIPMENT LTD.,

*Defendant-Counter-Claimant-Appellee*,

SJ COMPUTERS, INC., SHMUEL JUDKOVITZ,

*Defendants-Appellees*.

---

DYNAMIC CONCEPTS, INC.

*Plaintiff-Appellee*,

POINT 4 DATA CORPORATION,

*Plaintiff-Counter-Defendant-Appellee*,

v.                                                                          15-3212-cv

TRI-STATE SURGICAL SUPPLY AND EQUIPMENT LTD.,

*Defendant-Counter-Claimant-Appellant*,

SJ COMPUTERS, INC., SHMUEL JUDKOVITZ,

*Defendants*.

---

For Plaintiff
and Plaintiff-Counter-Defendant:        MATTHEW J. PRESS, Press Law Firm, P.L.L.C., New York, N.Y.

For Defendant-Counter-Claimant:        ROBERT J. BERNSTEIN, The Law Office of Robert J. Bernstein, New York, N.Y.

For Defendants:                               ELI FIXLER, Esq., Brooklyn, N.Y.

Appeal from an order of the United States District Court for the Eastern District of New York (Carol B. Amon, *Chief Judge*).

**UPON DUE CONSIDERATION WHEREOF** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the judgments and orders of the District Court are **AFFIRMED IN PART, AND VACATED IN PART,** and the case is **REMANDED** for further proceedings.

Plaintiffs are developers of two software programs, UniBasic (a computer development language, distributed by Dynamic Concepts, Inc.), and Genesys (an accounting software program sold by Point 4 Data Corporation that runs in the UniBasic programming language). In 1999, Tri-State Surgical Supply and Equipment Ltd. ("Tri-State"), purchased a license to use Genesys and UniBasic subject to certain limitations, including a limitation on the number of concurrent users. UniBasic, in turn, contained security measures designed to enforce these licensing limitations, including the Passport Licensing Security Software ("Passport"), designed to ensure that UniBasic would not run if the licensing conditions were not complied with. According to Plaintiffs, Tri-State, for reasons unimportant to the issues on appeal, with the assistance of Defendants SJ Computers, Inc., and Shmuel Judkovitz, modified these security measures (including Passport) in a way that prevented these software programs from enforcing the licensing restrictions. The Plaintiffs subsequently brought suit, alleging claims arising under, *inter alia*, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a) (making it a violation to "circumvent a technological measure that effectively controls access to a work protected under [the Copyright Act]"), the Lanham Act, 15 U.S.C. § 1125(a), and breach of contract.

Plaintiffs now appeal the orders of the United States District Court for the Eastern District of New York (Amon, *C.J.*)[1], first, granting summary judgment to the Defendants on the Plaintiffs' DMCA claim, and second, granting summary judgment on the Plaintiffs' claim for a

---

[1] Judge Amon was Chief United States District Judge of the Eastern District of New York at the time the underlying decisions were issued.

particular category of damages arising out of their breach-of-contract claim (the "unrestricted user fees" claim). Additionally, in a separate appeal that we address in this summary order (15-3212-cv), Tri-State appeals the District Court's denial of its motion for attorney's fees on Plaintiffs' Lanham Act claims, made after the District Court entered final judgment on the merits as to all of the claims and counter-claims in this case, including Plaintiffs' Lanham Act claims. We assume the parties' familiarity with the underlying facts, procedural history, and issues in these appeals. For the reasons that follow, we affirm the District Court's grant of summary judgment to the Defendants on the DMCA claim, but vacate the District Court's award of summary judgment to the Defendants on the Plaintiffs' unrestricted user fees breach-of-contract claim. We also affirm the District Court's denial of attorney's fees as to the Lanham Act claims.

## I. The DMCA Claim

First, we affirm the District Court's grant of summary judgment to the Defendants on the Plaintiffs' DMCA claim.

As an element of their DMCA claim, Plaintiffs had to show that at least one of the underlying software programs to which the security protocols (such as Passport) granted access—i.e., Genesys and/or UniBasic—was protected under the Copyright Act. 17 U.S.C. § 1201(a). To establish that the two programs were copyrightable (as well as to support Plaintiffs' claim that Defendants modified Passport), Plaintiffs submitted two declarations as part of their opposition to the Defendants' motion for summary judgment: the first from the CEO of Dynamic Concepts, Inc. (the developer of UniBasic) Douglas Chadwick, *see* A 353, and the second from the CEO of Point 4 Data Corporation (the developer of Genesys), Don Burden, *see* A 459. The declarations included descriptions of Genesys and UniBasic as well as commentary on how the code and features of each program compared to industry standards and other,

4

comparable software programs—to demonstrate sufficient originality to render the programs copyrightable.[2] The declarations also referenced and attached exhibits, which included screenshots of the Genesys program.

The District Court found that both declarations contained expert testimony, as defined under Federal Rule of Evidence 702, rather than solely lay opinion, as permitted under Federal Rule of Evidence 701, or lay testimony, under Federal Rule of Evidence 601. *See* SPA 18–27 (Report and Recommendation of Magistrate Judge Mann); SPA 81, 84–92 (Decision of Chief Judge Amon adopting in part, and reserving judgment in part on, the R & R). Because it was undisputed that the Plaintiffs had not timely complied with expert discovery disclosure rules, the District Court found preclusion to be the appropriate remedy, and thereby struck every paragraph in the respective declarations that included any expert testimony, as well as certain exhibits that were referenced and explained solely in those paragraphs. *See* SPA 34; SPA 91–92. Having before it virtually no evidence describing the underlying programs, the District Court finally concluded that no reasonable jury could find that the Plaintiffs had met their burden of showing that their computer programs contained copyrighted material. On this basis, the District Court awarded summary judgment to the Defendants on the DMCA claim. SPA 43; SPA 93.

---

[2] Copyright protection for a software program may inhere in three elements. First, protection can extend to the literal elements—i.e. the source code (the "spelled-out program commands that humans can read") and the object code (the binary equivalent). *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1355–56 (Fed. Cir. 2014). Second, copyright protection may extend to the non-literal elements of that code (i.e. the "sequence, structure, and organization" of the written program). *Id.* Finally, copyright protection can extend to the actual experience a user has *running* the program: not only the "interface," *id.*, but also the "audiovisual work" that the program itself generates, *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994). In assessing whether these features receive protection, we have emphasized that the literal *and* non-literal aspects of computer programs are often uniquely utilitarian, *see Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992) ("In the context of computer programs, many of the familiar tests of similarity prove to be inadequate, for they were developed historically in the context of artistic and literary, rather than utilitarian, works." (internal quotations omitted)), and subject to functional constraints unique to their medium, *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 537–38 (6th Cir. 2004) (noting that the district court erred, in the context of assessing the copyrightability of a very short, literal code, in failing to consider "external factors such as compatibility requirements, industry standards, and efficiency" that necessarily limited what was actually copyrightable). The declarations were largely designed, given these legal parameters, to establish the originality and non-utilitarian nature of elements of the underlying programs.

On appeal, Plaintiffs argue: (1) that the District Court abused its discretion in concluding that the declarations contained expert testimony; (2) that, assuming that the declarations did contain expert testimony, the District Court abused its discretion in ordering preclusion as the appropriate remedy for the Plaintiffs' failure to comply with expert discovery rules; and (3) that, even assuming preclusion was warranted, generally, the District Court abused its discretion in striking the entirety of each paragraph that it found to contain expert testimony as well as the exhibits referenced in those paragraphs, rather than striking only those sentences or words that were designated expert. We find no abuse of discretion.

A. **The District Court Did Not Abuse Its Discretion in Finding the Declarations Contained Expert Testimony**

The Plaintiffs first argue that the district court abused its discretion in finding that the Burden and Chadwick declarations contained expert testimony. "We review a district court's decision [whether] to admit evidence for abuse of discretion." *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005).

Federal Rule of Evidence 701 states that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; *and* (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701 (emphasis added). We have stated, in considering the third pre-requisite to admissibility under Rule 701, that "a court must focus on 'the reasoning process' by which a witness reached his proffered opinion," and that, to constitute lay opinion, an opinion must be the product of "reasoning processes familiar to the average person in everyday life," rather than "scientific, technical, or other specialized knowledge." *Garcia*, 413 F.3d at 215 (quoting 4 *Weinstein's Federal Evidence* § 701.03[1]). The purpose of these pre-

6

requisites to admissibility under Rule 701 "is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements [for expert testimony]" in Federal Rule of Civil Procedure 26. *Id.* Finally, it is well established that "[i]t is the proponent of lay opinion testimony who must satisfy the rule's three foundation requirements." *Id.* at 211.

For the reasons that follow, we find that the District Court did not abuse its discretion in concluding that the Chadwick and Burden declarations included expert testimony.

First, the District Court did not abuse its discretion in finding that the declarants' proffered testimony as to the uniqueness of certain elements of UniBasic and Genysis as compared with other programs in the industry drew not on their experience as CEOs of their company, but on their technical and specialized knowledge of software design and industry standards. The District Court did not hold that mere descriptions of the programs and their features—however technical—were expert opinions. *See, e.g.*, SPA 88 (permitting Chadwick to describe the contours of the Passport software). Instead, the court noted that the declarations did not simply include descriptions of the underlying programs, but offered opinions designed to situate elements of those programs in the industry as a whole in order to demonstrate that the programs included original—and thus potentially copyrightable—elements. *See, e.g.*, Burden Decl. ¶ 4 ("No other [Enterprise Resource Planning] system utilizes this unique combination of Menu, Program and Operator Organization."); Chadwick Decl. ¶¶ 3-5 (comparing UniBasic to a distinct program in order to establish the complexity of UniBasic by comparison). It concluded that these opinions were expert and could not be admitted under Rule 701. *See* SPA 85 (noting that "Burden utilizes his technical and specialized knowledge to provide opinions about Genesys

7

in the context of the software industry generally" and that Chadwick "venture[s] beyond his experience with UniBasic by expounding on the functions and contents of another program, not owned by [Dynamic Concepts, Inc.]").

Plaintiffs argue that the District Court erred in finding these opinions to be expert, as the declarants, in forming these opinions, relied on their personal experiences as CEOs of their respective companies, and thus based the opinions on reasoning processes familiar to average persons. As Plaintiffs correctly observe, we have often held that a district court does not necessarily abuse its discretion when it allows a party with personal experience with the facts of a case to provide lay opinion based on that personal experience. *See, e.g.*, *United States v. Yannotti,* 541 F.3d 112, 126 (2d Cir. 2008) ("Mindful of making explicit the requirements for lay witness testimony in comparison to expert testimony, we now conclude that where a witness derives his opinion solely from insider perceptions of a conspiracy of which he was a member, he may share his perspective as to aspects of the scheme about which he has gained knowledge as a lay witness subject to Rule 701, not as an expert subject to Rule 702."); *United States v. Rigas,* 490 F.3d 208, 225 (2d Cir. 2007) (concluding that the district court did not abuse its discretion in allowing a lay witness to testify about an organization's fraudulent financial conduct where that witness made first-hand observations and was personally aware of the organization's financial misstatements). However, and notwithstanding these decisions, we have made clear that, if a witness who has personal familiarity with the facts of a case nevertheless "bas[es] . . . his opinion[s]" as to those facts on specialized or technical knowledge extrinsic to that personal, relevant experience—i.e. reasoning processes unfamiliar to average persons—then a district court does not necessarily abuse its discretion in finding the opinions to be expert. *See Garcia*, 413 F.3d at 216 (holding that a district court abused its discretion in admitting a police

8

officer's opinion "reached in the course of his investigation" as lay testimony, because, although the officer may have personally investigated the conspiracy in question, he based his opinion of the facts he observed on "his specialized training and experience"); *see also id.* ("We hold that the foundation requirements of Rule 701 do not permit a law enforcement agent to testify to an opinion [based on his investigation] if the agent's reasoning process depended, in whole or in part, on his specialized training and experience."); *cf. Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004) (finding that a district court abused its discretion in permitting a bank investigator to go beyond simply testifying as to findings reached in the course of his investigation of a bank to instead recounting opinions "reflect[ing] specialized knowledge [the examiner had] because of his extensive experience in international banking").

The District Court permissibly concluded that, although both declarants had familiarity with their programs because of their experience as CEOs, the reasoning processes on which they relied to analyze these programs and situate them in the industry as a whole were not simply those of CEOs describing their products based on personal experience, but those of experts with technical knowledge of software design and specialized knowledge of industry standards. *See* SPA 85. Given that the declarations did not qualify or contextualize the bases of the declarants' opinions (in a way that might satisfy Plaintiffs' burden of showing the opinions were not based on technical or specialized knowledge), that the issues were at least arguably technical in nature and not easily accessible to average persons, and that the declarations emphasized the declarants' expertise with these technical issues, this conclusion was not an abuse of discretion. *See Garcia*, 413 F.3d at 216 (finding that an officer's testimony was not lay opinion because he based his opinions as to wire intercepts—which he intercepted in the course of his investigation—on his prior expertise gained in "review[ing] thousands of intercepted conversations in the course of

9

various narcotics investigations"); *Bank of China,* 359 F.3d at 182 (finding a district court abused its discretion in admitting as lay opinion a bank examiner's discussion of whether what he observed at the bank comported with "typical international banking transactions").

The District Court also concluded that Chadwick's analysis of the Defendants' purported modification of the Passport program—which involved his review of evidence produced by the Defendants in the course of the litigation, and his conclusions based on that review—was based on technical and specialized reasoning processes unfamiliar to average persons, particularly given that the Chadwick declaration emphasized Chadwick's expertise with software design in a way seemingly designed to confer an aura of expertise on those conclusions. *See* Chadwick Decl. ¶ 1 (noting that Chadwick, in addition to being CEO of Dynamic Concepts, Inc., has "been a software developer since the mid 1970's, specializing in the development of Operating Systems and Application Development Platforms"). We also conclude that the District Court did not abuse its discretion in reaching this conclusion.

In sum, the District Court did not abuse its discretion in concluding that the Burden and Chadwick declarations included substantial expert testimony.

**B.     The District Court Did Not Abuse Its Discretion in Ordering Preclusion and Striking Each Paragraph Containing Expert Testimony and Attached Exhibits**

The Plaintiffs next argue that the District Court abused its discretion in ordering preclusion of the undisclosed expert testimony, and in striking each paragraph containing expert testimony and the exhibits referenced in those paragraphs. Appellant Br. at 32. We again find no abuse of discretion.

Under Federal Rule of Civil Procedure 26(a)(2), parties must timely disclose the identity of witnesses who will present expert testimony pursuant to, *inter alia*, Rule of Evidence 702. "If

10

a party fails to . . . identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To determine whether preclusion of testimony under Rule 37 is an appropriate sanction for failure to meet disclosure requirements, we use a four-factor test. *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997). Those factors are "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Id.* We review a preclusion order for abuse of discretion. *Id.*

Here, the District Court did not abuse its discretion in determining that preclusion was appropriate. We agree with the District Court that the testimony in question was highly important. SPA 91. The other factors weighed, however, favor exclusion. As to the first factor, the Plaintiffs' proffered justification for non-disclosure—that they reasonably believed the Burden and Chadwick declarations were non-expert—was not compelling, particularly given that the Defendants had repeatedly inquired (prior to the disclosure deadline) whether the declarations would be offered as expert, and Plaintiffs had repeatedly responded that they had not yet "made a determination"—a position they continued to communicate even after the deadline passed. As to the third factor, even though the Defendants were aware that Burden and Chadwick would offer declarations and that copyrightability would be at issue, Plaintiffs' failure to disclose still prejudiced the Defendants. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757–58 (7th Cir. 2004) (noting that, although the

11

Defendant knew that the particular witnesses would testify and what they would testify too, "[f]ormal disclosure of [the witnesses as] experts [was] not pointless," as "there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report"); *Softel*, 118 F.3d at 962 ("[T]he parameters of the dispute in a highly technical case . . . are largely defined by expert testimony. . . . Because [the Defendant] would have been forced, at a very late date in the discovery process, to accommodate potentially significant shifts in the theories being offered against it, [the prejudice] factor cuts in favor of [the Defendant]."); *cf. United States v. Ganier*, 468 F.3d 920, 928 (6th Cir. 2006) (finding no prejudice, in part because the Defendant already had an expert prepared to testify about the feature in question). Finally, a continuance was not appropriate under the circumstances. *See Softel*, 118 F.3d at 962–63 ("When trial courts permit deadline slippage of this sort, trials cannot be scheduled when they ought to be, resulting in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds. . . . Denial of a continuance in the circumstances was certainly within the sound discretion of the trial judge."). The first, third, and fourth *Softel* factors weigh in favor of preclusion; the second cuts only slightly against preclusion. On balance, therefore, it is clear from the district court's assessment of the factors that its ruling was not an abuse of discretion.

Finally, the Plaintiffs argue that the District Court abused its discretion in parsing the declarations paragraph by paragraph (rather than, for instance, line by line) and striking each

offending paragraph as well as exhibits that were referenced solely in those paragraphs. *See* SPA 88, 91–92. We agree with the District Court that it had no obligation, under the circumstances, to "parse out every phrase contained in the declaration[s] to determine which constitute[d] lay versus expert [testimony]." SPA 88. As the District Court noted, "it [was] [P]laintiffs' responsibility to ensure that the evidence on which they s[ought] to rely [was] introduced properly." *Id.* Indeed, no rule required the District Court to parse the declarations as carefully as it did—paragraph by paragraph—rather than strike the entirety of the declarations as expert. It was thus not an abuse of discretion to have failed to parse further than the court ultimately did.

We thus conclude that the District Court did not abuse its discretion in finding that certain paragraphs of the Burden and Chadwick declarations contained expert opinions and in striking those paragraphs and exhibits attached to them. Having struck almost all of the evidence Plaintiffs offered to establish the copyrightability of the software, the District Court properly granted summary judgment to the Defendants on the DMCA claim.

## II.    The Breach of Contract Claim

Plaintiffs also argue that the District Court erred when it determined that Plaintiffs, for purposes of their breach-of-contract claim, abandoned their claim for damages amounting to the value of an imputed license for an unlimited number of users of Genesys and UniBasic (the "unrestricted user fees" claim). Appellant Br. at 48.[3] We agree and vacate the District Court's grant of summary judgment as to this claim.

_____

[3] Plaintiffs also note that the District Court found that they abandoned a claim for lost fees for the Defendants' use of the Genesys source code as actual damages for the Defendants' contractual breach. *See* Appellant Br. at 16; SPA 46. On appeal, the Plaintiffs do not challenge this finding of abandonment by the District Court. *See* Appellant Br. at 48–51.

13

After awarding the Defendants summary judgment on the Plaintiffs' DMCA claims, the District Court addressed a separate issue: whether to award summary judgment to the Defendants on the Plaintiffs' breach of contract damages claims. *See* SPA 102–03. The District Court concluded, *inter alia*, that the Plaintiffs had abandoned their claim for unrestricted user fees, amounting to approximately $500,000, as well as for source code license fees, amounting to $85,000. *See* SPA 108–11. On this basis, it granted summary judgment as to those damages claims to the Defendants.

"Where a partial response to a motion [for summary judgment] is made—*i.e.,* referencing some claims or defenses but not others . . . in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 197–98 (2d Cir. 2014). The District Court found that the Plaintiffs, in opposing the Defendants' motion for summary judgment, abandoned their claim for unrestricted user fees damages as part of their breach-of-contract claim, opting instead to pursue this theory of damages solely as part of their DMCA claim. We conclude, instead, that the Plaintiffs' opposition brief opposed the grant of summary judgment to Defendants as to the unrestricted user fees damages claim under both theories of liability, and that the District Court thus abused its discretion in finding the claim abandoned.[4]

We begin with a review of the parties' summary judgment briefs addressing the unrestricted user fees damages theory, before explaining the basis of our conclusion. In moving for summary judgment, the Defendants argued that the unrestricted user fees damages theory did not hold up, and primarily made such arguments in the portion of their brief addressing the breach-of-contract claim. *See* CA 447–49. The Defendants subsequently incorporated these

---

[4] Both parties assume that we review a finding of abandonment for abuse of discretion, and so we assume, *arguendo*, that that is the correct standard of review.

arguments by reference into the later section of their brief addressing damages claims under the DMCA, and thus moved for summary judgment as to this theory of damages under both theories of liability. *See* CA 469. In opposing the Defendants' motion, Plaintiffs responded to the Defendants' arguments as to this damages claim in the DMCA portion of their brief. *See* CA 541. In a subsequent section of their opposition memorandum addressing the breach-of-contract claims, however, Plaintiffs referenced back to their arguments addressing the viability of the unrestricted user fees theory of damages. They stated, "[a]s set forth above, Tri-State's motion for summary judgment as to [Plaintiffs'] damages for breach of contract . . . must be rejected." CA 547, 548.

Perhaps in light of this statement of reference, in their reply brief in further support of their motion for summary judgment, the Defendants *did not* argue that Plaintiffs had abandoned any particular theory of damages as arising under breach of contract or the DMCA. *See* CA 639–62. Nevertheless, addressing Defendants' argument that the unrestricted user fees were not recoverable for Defendants' breach of contract, the Magistrate Judge *sua sponte* concluded that Plaintiffs did not seek recovery of such fees under breach of contract, only under the DMCA, and for that reason denied the Defendants' argument as moot. SPA 46–47.

Plaintiffs thereafter timely objected to the District Court, arguing that they did not abandon, *inter alia*, the unrestricted user fees claim for breach of the contract, but instead intended to, and did, incorporate the arguments addressing this theory of damages as to their DMCA claims into the section of their brief addressing breach-of-contract. SPA 83.

The District Court disagreed. It held, based on an analysis of the Plaintiffs' opposition brief, that Plaintiffs had intended to abandon any claim of unrestricted user fees as breach-of-contract damages for three interlocking reasons: First, it noted that the statements of

15

incorporation failed to explicitly cite the portion of the Plaintiffs' memorandum addressing the unrestricted user fees. SPA 110. Second, it observed that each Plaintiff's statement of incorporation—although addressing contract damages—"occur[red] in a section discussing breach of contract liability, not damages." SPA 110. Third, it noted, in addressing this theory of damages under the DMCA portion of their brief, the Plaintiffs did not explicitly argue that they sought these damages as contract damages in the alternative to seeking them as actual damages under the DMCA. SPA 110. Finally, the District Court concluded that it was "clear to [the] Court" that Plaintiffs had made a "strategic decision" to merely seek recovery of these fees under the DMCA. SPA 111. We disagree.

As an initial matter, a review of the Plaintiffs' opposition brief demonstrates that they did intend to incorporate, by reference, arguments addressing the unrestricted user fees theory into the breach-of-contract section. First, Plaintiffs' incorporation is apparent when read in the context of the Defendants' brief: both parties made arguments as to the unrestricted user fees theory of damages in the first section of their briefs to which the arguments were germane, and then referenced back to those arguments when they were later relevant. That Plaintiffs' statement of reference was brief, then, mirrored the brevity with which Defendants had themselves incorporated earlier arguments by reference. Second, other language in the Plaintiffs' brief demonstrates that they were pursuing the unrestricted user fees theory as a breach-of-contract damages theory. Both Plaintiffs, in sections of the brief seeking summary judgment as to liability for breach-of-contract, emphasized that "[the] effect of the Crack was to remove any effective limit upon the number of concurrent users of . . . [both] software [programs]." CA 546–47. This was a necessary pre-requisite to the broader argument that unrestricted user fees were recoverable as actual damages.

16

Moreover, we do not find persuasive the District Court's ultimate analysis—that the Plaintiffs' purported abandonment could be explained as a strategic choice, rendering the court's interpretation of the Plaintiffs' brief plausible. The District Court noted,

> Tri-State, in moving for summary judgment, had argued that plaintiffs were seeking some categories of damages as contract damages and others as DMCA damages. Plaintiffs, apparently, determined that they could defeat Tri-State's summary judgment motion as to the Fee Damages by abandoning those damages as contract damages and arguing that they were recoverable as DMCA damages. Because Tri-State had only moved for summary judgment as to the Fee Damages as contract damages, such a strategy would allow the Fee Damages to survive summary judgment so long as plaintiff's DMCA claim was not dismissed.

SPA 111. A review of the briefs does suggest that the Defendants characterized the source code license fee theory of damages as arising under contract, *see* CA 446–47, and made no argument as to whether such fees were recoverable under the DMCA claim, *see* CA 469–70. In response, the Plaintiffs recharacterized the source code license fees as arising under the DMCA, not contract, to defeat the Defendants' motion. CA 541. Importantly, however, there is no comparable evidence that this strategy was applied to the unrestricted user fees claim. In contrast to the source code license fees, the Defendants did not "only move[] for summary judgment as to the [unrestricted user fees] as contract damages." SPA 111. Instead, they explicitly acknowledged that the Plaintiffs sought the unrestricted user fees as damages under *both* the DMCA and breach-of-contract theories. *See* CA 469 (noting that "Plaintiffs also seek two other categories of actual damages" under the DMCA, including "the unlimited user license fees"). Whereas the District Court's analysis thus supports its finding that the source code fees were abandoned as contract damages, it does not support its other conclusion—that Plaintiffs abandoned the unrestricted user fees as contract damages. Given that Plaintiffs vigorously contested the Magistrate Judge's finding of abandonment, that Plaintiffs' brief included a

17

statement by reference that paralleled the one included in Defendants' brief, that Defendants did not suggest, in their reply brief, that the claim had been abandoned, and that other indicia in Plaintiffs' brief addressing contract liability demonstrated an emphasis on the Defendants' modification of security protocols to avoid the limitation on the number of concurrent users (a factual predicate to the unrestricted user fees damages claim), we conclude that the District Court abused its discretion in finding the claim abandoned. *See* CA 547.

In short, we find that the Plaintiffs' opposition brief incorporated its arguments as to the viability of the unrestricted user fees damages claim into the section opposing the Plaintiffs' motion for summary judgment as to the breach-of-contract claim. It was thus error for the District Court to deem the claim abandoned. We therefore vacate the District Court's grant of summary judgment on this claim to the Defendants.

## III. Attorney's Fees on the Lanham Act Claim

In a related appeal that we resolve in this summary order (15-3212-cv), Tri-State (in the related appeal, the Appellant) appeals the District Court's decision not to award fees for Tri-State's defense against the Plaintiffs' non-meritorious Lanham Act claims. In light of our decision vacating the District Court's grant of summary judgment to the Defendants on the Plaintiffs' unrestricted user fees breach-of-contract claim, it may be that the District Court will revisit its attorney's fees determination, and that subsequent procedural history in this case will affect elements of that decision. Nevertheless, in the interest of efficiency, and because the District Court's grant of summary judgment to the Defendants on the Plaintiffs' Lanham Act claims remains undisturbed by any disposition in these appeals, we address Tri-State's claim of error. *Cf. Barnes v. Zaccari*, 592 F. App'x 859, 869 (11th Cir. 2015) (per curiam) (first, noting that the panel's determination that the district court erred in granting summary judgment to one

18

defendant on a particular claim would require recalculation of the attorney's fee award, before stating that "in the interest of efficiency," the panel would "provide some guidance by addressing [the appellant's unrelated claims of error in the attorney's fee award] to the extent [they may] be relevant on remand"). We review the District Court's decision "for an abuse of discretion." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999). We find no abuse of discretion here.

After the District Court granted summary judgment to Tri-State on Plaintiffs' Lanham Act claims, Tri-State moved for attorney's fees relating to those claims pursuant to 17 U.S.C. § 1117(a) ("The Court in exceptional cases may award reasonable attorney fees to the prevailing party."). In resolving Tri-State's motion, the District Court cited the rule previously applied in this Circuit that, to qualify as an "exceptional case[ ]" under the Lanham Act, there must be evidence of "fraud or bad faith" or "willful infringement." SPA 27 (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012)). After articulating this standard, the court held, first, that fees should not be awarded because Tri-State had failed to establish that Plaintiffs pursued their claims in bad faith, and second, that even if Tri-State could establish bad faith, for other equitable reasons, "the Court would exercise its discretion to deny a fee award in this case." SPA 32.

Tri-State argues that the District Court erred in requiring bad faith, in light of the Supreme Court's decision in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756–57 (2014) (finding that bad faith is unnecessary for an award of attorney's fees under the analogous fee-shifting provision of the Patent Act). We need not decide whether *Octane* (a Patent Act case) abrogated *Louis Vuitton* (a Lanham Act case) for two reasons. First, Tri-State forfeited this argument by failing to make it before the District Court. The argument that *Octane*

abrogated *Louis Vuitton* was clearly available to Tri-State at the time it moved for fees. *See, e.g.*, A 326 n.11 (in which Tri-State cites *Octane* in footnote in its reply brief seeking attorney's fees, but does not argue that *Octane* changed the standard under the Lanham Act); *cf. F.D.I.C. v. Bear Stearns Asset Backed Sec. I LLC*, 92 F. Supp. 3d 206, 213–14 (S.D.N.Y. 2015) (in which the district court addressed a party's argument that intervening authority abrogated a prior Second Circuit precedent), *vacated and remanded*, *F.D.I.C. v. Credit Suisse First Boston Mortg. Sec.*, 674 F. App'x 86 (2d Cir. 2017) (summary order); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 499 (S.D.N.Y. 2006), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (summary order) (same). Because the argument was readily available to it, Tri-State cannot now argue, for the first time, that the District Court should have applied a different standard to its motion for attorney's fees under the Lanham Act. Contrary to the Defendants' argument on appeal, were this Court—or any other panel of the Second Circuit—to now adopt the *Octane* standard in the Lanham Act context, that decision would not excuse the Defendant's failure to, notwithstanding its clear knowledge of the existence of and holding of *Octane*, argue for that standard before the District Court. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 243–44 (2d Cir. 2016) ("To excuse waiver on the grounds of intervening authority, it is not enough to argue that the intervening authority may have sharpened or otherwise elaborated upon an argument. Rather, the intervening authority must have established an argument that was not known to be available to the party seeking to excuse waiver at the first opportunity that the party had to raise the argument." (internal quotation marks omitted)); *cf. United States v. Ardley*, 273 F.3d 991, 992 (11th Cir. 2001) ("Retroactivity doctrine answers the question of which cases a new decision applies to, *assuming that the issue involving that new decision has been timely raised and*

*preserved.* Procedural bar doctrine answers the question of whether an issue was timely raised and preserved, and if not, whether it should be decided anyway." (emphasis added)).

In any event, even assuming *Octane* abrogated *Louis Vuitton* and the District Court should have applied the *Octane* standard, we would not vacate the District Court's decision. The District Court held that, even if it found the Plaintiffs' Lanham Act claims had been brought in bad faith, it would decline to award fees for other equitable reasons unrelated to the Plaintiffs' culpability. *See* SPA 32. The District Court's decision, then, did not rest on its holding that bad faith was required for a finding that the Plaintiffs' was an "exceptional case," but instead rested on other equitable considerations. We find no abuse of discretion in this determination, and see no reason why application of the *Octane* standard on remand would change the District Court's conclusion.

## IV.    Conclusion

In conclusion, we AFFIRM the District Court's grant of summary judgment as to the Plaintiffs' DMCA claim, AFFIRM its denial of attorney's fees as to the Lanham Act Claim, but VACATE its grant of summary judgment to the Defendants as to the Plaintiffs' unrestricted user fees claim for contract damages. We therefore remand the case for further proceedings consistent with this order.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

21